## Chicago Terminal Transfer R. R. Co. v. Robert Schmelling.

| 99 | 577 |
|---|---|
| a197s | 619 |
| 99 | 577 |
| 109 | ¹568 |

1. RAILROADS—*When the Relation of Carrier and Passenger Ceases.*—The relation of carrier and passenger does not cease until the passenger has had a reasonable opportunity to leave the car at the place where his journey ends and passengers are discharged.

. 2. SAME—*Right of Passengers to Leave the Cars by Designated Exits.*—When a railroad company does not desire passengers to leave the cars by a particular exit it should forbid them to do so.

3. INSTRUCTIONS—*Making the Jury Judges of the Materiality of the Allegations of the Declaration.*—On the trial of an action for personal injuries, an instruction by which the jury is to determine what are and what are not material allegations of the declaration, is improper, and should not be given.

4. HARMLESS ERROR—*Instructions Producing No Harm.*—In an action founded upon negligence an instruction which is productive of no harm is not reversible error.

**Trespass on the Case,** for personal injuries. Appeal from the Superior Court of Cook County; the Hon. FARLIN Q. BALL, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1900. Affirmed. Opinion filed January 21, 1902.

**Statement.**—This was an action on the case by Robert Schmelling against the Chicago, Burlington and Quincy Railroad Company and the Chicago Terminal Transfer Railroad Company. The declaration is in two counts. The allegations of the negligence being, some joint as to both defendants, and also several as to each of the defendants.

578 APPELLATE COURTS OF ILLINOIS.

VOL. 99.] Chicago Terminal Transfer R. R. Co. v. Schmelling.

A plea of not guilty was filed by each defendant. The trial resulted in a verdict and judgment against appellant for $4,000. As to the Chicago, Burlington and Quincy Railroad Company, the plaintiff entered a non-suit.

It appears that the two defendant railroad companies owned and operated parallel railroads adjoining and near the place of the accident, the westerly rail of the westerly track of the C., B. & Q. being from seven to eight feet east of the easterly rail of the easterly track of the Terminal Company. August 8, 1898, appellee took passage on an early morning train of the Terminal Company at Fifty-first street, to ride to Twenty-sixth street; he paid his fare, and when the train had stopped at Twenty-sixth street, or when it was slowing up to make that stop, he alighted from the easterly front platform of the front car of the train and moved directly east, and was about to step upon the track of the C., B. & Q. when he was struck by a locomotive belonging to it, knocked down and received injuries for which he instituted this suit.

He was familiar with the location, from the fact that he had every morning for a year and a half prior to the accident taken passage on the same train and alighted at the same place, the train each morning stopping substantially at the same spot it did on the morning in question.

In alighting from the Terminal train appellee did not look for the approach of a train on the C., B. & Q. track. At Twenty-sixth street is a railroad crossing; the tracks of the two defendant companies cross at right angles and are immediately south of the south line of Twenty-sixth street. All passenger trains on the Terminal road going north stop for this crossing and close up to it, and such stopping is advertised in its time-cards and was on the morning in question called out by the conductor, in the cars.

West of the track on which the Terminal train was running is another track of the Terminal Company and farther west is a switch track of the Terminal Company, while on the east of the Terminal Company's tracks are, first, the tracks on which the C., B. & Q. train was running and next

east of it another track, and still farther east a switch track. Appellee's business was that of a brick-layer, and he was employed east and north of the crossing where the trains stop, thus requiring him to go east on Twenty-sixth street to Blue Island avenue, and northeasterly on Blue Island avenue to his place of business. Just north of the place of the accident two tracks of the Santa Fe road ran at right angles across the tracks of the Terminal and the C., B. & Q. Just north of the Santa Fe tracks is Twenty-sixth street, but there was no sidewalk on the south side of Twenty-sixth street. In the middle of Twenty-sixth street were two tracks on which electric cars ran east and west. At this Twenty-sixth street stopping place the Terminal Railway Company had neither depot nor platforms. The ground between the tracks of the Terminal and the track of the Burlington was between five and seven inches below the level of the tracks and was composed of stone and sand. Apparently, each car of the two trains projected over the rails about fifteen inches. The distance from the step from which Schmelling alighted to the ground was between eighteen inches and two feet. The Terminal train going south overtook the C., B. & Q. train and passed it, but immediately began slowing up so that it had slowed up and stopped for the Santa Fe crossing while the C., B. & Q. train was passing it. When the Terminal train stopped and plaintiff alighted therefrom the C., B. &. Q. train was passing at considerable speed.

JESSE B. BARTON, attorney for appellant.

KICKHAM SCANLAN and EDGAR L. MASTERS, attorneys for appellee.

MR. JUSTICE WATERMAN delivered the opinion of the court.

The relation of carrier and passenger does not cease until the passenger has had a reasonable opportunity to leave the place where his journey ends and passengers are discharged. Elliott on Railroads, Sec. 1592.

Was appellee injured before he had, or in consequence of his failure to avail himself of such opportunity?

**580    APPELLATE COURTS OF ILLINOIS.**

VOL. 99.] Chicago Terminal Transfer R. R. Co. v. Schmelling.

It is said that he alighted upon the wrong side of the car; this may be, but he left the car by a way provided by appellant and without warning not to use it. If appellant did not wish to have him get off as he did it should have forbidden his so doing. Penn. Co. v. McCaffery, 173 Ill. 169.

Appellant says :

"Appellant could have prevented appellee from going where he did go, by barring his exit from the east platform of the car, or by placing a barrier between its tracks and those of the C., B. & Q. or by giving him direct warning by words spoken or written. For all that appears in this case, either from the allegations of the declaration or the proofs, these things might have been done, and as it was upon appellee to allege and prove that they were not done it must be presumed they were done in the absence of such allegations and proof."

We can not agree to appellant's conclusion that " it must be presumed " these things " were done, in the absence of such allegations and proof."

The alighting of appellee upon the cinder and stone covered ground upon which he stepped in getting off the car, did not terminate his relation as a passenger. He was then in a place wherein the distance between passing cars and engines would be from four and a half to five and a half feet. A very uncomfortable as well as dangerous position.

Appellant urges that he could have walked in safety thirty feet north to Twenty-sixth street and thus escaped injury. He might or he might not have so done without harm.

The ordinarily careful person remains as short a time as possible close to a railroad track along which trains are passing. The wind from the coming Burlington train might have thrown him off his feet; or a little swerving of his body might have brought it in collision with car or locomotive.

The description of the situation did not impress court or jury below and it does not impress us as showing an exercise of that care for the safety of appellee which the law made it the duty of appellant to exercise.

He was a common laborer, but the duty to afford him a reasonably safe egress to a public street was the same as if he had been the President of the United States.

He was not injured by a train run by appellant but in his endeavor to escape from the insecure place in which appellant left him. There was a curve in the track of the C., B. & Q. road and neither Schmelling nor the man who immediately followed him out of appellant's car saw the C., B. & Q. train until it was close upon appellee, and in his haste to get away from the dangerous spot upon which he alighted he stepped upon its right of way and was struck by its engine.

That the company whose passenger he was failed to discharge its duty to him we have no doubt. Whether he exercised ordinary care was a question for the jury, as to which the evidence is such that we can not say its conclusion is opposed to the preponderance of the evidence.

Complaint is made of the following instruction:

" The court instructs the jury that if the plaintiff has proven all the material allegations of his declaration by a preponderance of the evidence, in manner and form as he has alleged them in his declaration, he is entitled to recover in this case."

The instruction should not have been given. It is not the function of a jury to determine what are or what are not material allegations in a declaration. T., St. L. & K. C. R. R. Co. v. Bailey, 145 Ill. 159; Lumaghi v. Gardin, 53 Ill. App. 667.

The jury were, however, fully informed by other instructions as to what must be proven in order that the plaintiff might recover, notably the first, second, third, sixth, ninth, tenth, twelfth and thirteenth given at the instance of the defendant. The erroneous instruction was therefore productive of no harm and the judgment should be reversed because of it.

Finding no error requiring a reversal of the judgment it is affirmed.