warning; and that, although several persons aided in carrying the body to the car, no one testified that the gate was found open,— it cannot be said that this story of a deliberate step to certain death was either plausible or convincing. If there was a gate at the platform, instead of a chain, it may, of course, be true that the deceased opened it, and stepped down upon the step in readiness to get off when he reached the lane, and in reliance upon the usual slackening of speed which would have made that act safe. The car then striking the curve at a high rate of speed would sufficiently account for the result, without necessarily involving contributory negligence as matter of law. And such a story would not be condemned as unlikely. But the one herein adverted to as told by the motorman, to the effect that the deceased stepped off the swiftly moving car before reaching his destination, and in spite of warning, seems, under all the circumstances, to be opposed to ordinary experience, and at variance with the natural instincts of self-preservation; and that conflicting story must be unreasonable, indeed, which a jury of average intelligence would reject in order to give this one credence. Under these circumstances the learned trial justice very properly left to the jury the task of deciding between the two opposing theories in a charge so lucid and fair that no exception was taken, —charging, indeed, every request made by the defendant's counsel; and I am unwilling to say that the conclusion reached is so irrational in itself, or so feebly supported by the evidence, as to require or justify another trial.

I therefore vote for affirmance.

(67 App. Div. 605.)

### WOLF v. THIRD AVE. R. CO. et al.

(Supreme Court, Appellate Division, First Department. January 10, 1902.)

**1. STREET RAILROADS—CONTRIBUTORY NEGLIGENCE.**

In an action against a street railroad company for injuries sustained by a passenger by stepping into a trench when alighting from a car in the nighttime, plaintiff having testified that no warning was given her by the conductor or any one, and that she did not see the ditch, or any rope or red lights, such as usually used about excavations, the question of whether plaintiff was guilty of contributory negligence was for the jury.

**2. SAME—NEGLIGENCE—EVIDENCE—SUFFICIENCY.**

Where a street railroad company had caused a trench to be excavated in a street, such trench being bridged over at crosswalks, and a car stopped in the nighttime at such a point that a passenger alighting stepped into the trench, the passenger not having been warned by the conductor, in an action for the injuries the jury were warranted in finding negligence, either in stopping the car opposite the open trench, or in not properly guarding the trench.

**3. SAME—NEGLIGENCE—GUARDING EXCAVATION.**

Where a street railroad company contracts with one to make an excavation in a street near its tracks, while the company is not liable for the negligence of the contractor, it owes a duty to the public to exercise care to guard the excavation.

**4. SAME—LIABILITY OF CONTRACTOR.**

Where one having a contract for the excavation of a trench along the side of a street railway track bridged the trench at crosswalks, and at

night protected the trench only by ropes and lights, which were stretched on the sidewalk side of the trench, it could not be said as a matter of law that the contractor had discharged his entire duty in covering the trench, and leaving the safety of passengers desiring to alight to depend on the accuracy of the motorman's judgment in stopping the car opposite the bridge.

5. SAME—INSTRUCTION.

Where a street railroad contracted with one to excavate a trench beside its track, and the contractor constructed bridges over the trench at crosswalks, but a passenger alighting at night from a car which did not stop beside the bridge stepped into the trench and was injured, and it was a question whether there were any lights about the trench, in an action against the railroad company and the contractor it was prejudicial error, as against the contractor, to refuse to charge that the contractor was not bound to exercise care to prevent those stepping off a car from stepping into the trench, if he had provided proper bridges for passengers to alight on.

6. PLEADING—ALLEGATIONS—INJURIES—EVIDENCE.

Where, in an action for personal injuries, the complaint alleged that plaintiff's ankle and wrist were sprained, and that she received bruises about her body and limbs, "and, as she is informed, injuries of an internal nature, which may be permanent," the allegations of the complaint were sufficiently broad to include injuries to plaintiff's womb.

7. SAME—DAMAGES—EVIDENCE.

Where, in an action for injuries, plaintiff testified that from the moment of the accident she had suffered pain, such as she had never experienced before, and physicians testified that she was suffering with a difficulty with the womb, which caused such pain, the evidence was sufficient to warrant an inference that the pain spoken of by her emanated from the difficulty testified to by the physicians, and that the trouble resulted from the accident.

8. SAME—EVIDENCE.

In an action for injuries, evidence of physicians that they found plaintiff suffering with a difficulty which should be relieved by an operation, and of one that the treatment was required, and of another that it was proper, it appearing that without such operations the pain suffered by plaintiff would continue indefinitely, was competent.

9. SAME—DAMAGES—FUTURE SUFFERING.

In an action for injuries sustained by plaintiff, an instruction that plaintiff was not entitled to recover for any future pain or suffering was more favorable than warranted.

10. SAME—DAMAGES—INSTRUCTIONS.

Where, in an action for injuries, physicians testified that plaintiff was suffering with a difficulty which should be relieved by an operation, such evidence could not be regarded as erroneous, it appearing that the court charged more favorably to defendant than the circumstances warranted to the effect that there could be no recovery for any future pain or suffering.

11. SAME—EXCESSIVE DAMAGES.

In an action by a married woman, 29 years old, for injuries which had caused her to suffer much pain for nearly two years and one-half prior to the trial, a verdict for $3,000 was not excessive.

Appeal from trial term, New York county.

Action by Freda Wolf against the Third Avenue Railroad Company and others. From a judgment in favor of plaintiff, and from an order denying defendants' motions for a new trial, they separately appeal. Affirmed as to the Third Avenue Railroad Company, and reversed as to the other defendants.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

74 N.Y.S.—22

Charles F. Brown, for appellant Railroad Co.
George Gordon Battle, for appellants Naughton and McMahon.
Henry A. Powell, for respondent.

LAUGHLIN, J.  The action is brought to recover damages for personal injuries sustained by the plaintiff in stepping from a car on the Third Avenue line into an open trench at 105th street, at about 11 o'clock at night on the 15th day of November, 1898.  The individual defendants were copartners engaged in the contracting business under the firm name of Naughton & Co.  It was alleged in the complaint and admitted by the answer of the contractors that they were engaged in digging a subway along Third avenue for the purpose of laying a subway electric road for the use and benefit of the Third Avenue Railroad Company.  The evidence shows that the work was commenced at 124th street on the 1st day of November, 1898, and continued southerly.  Upon either side of the track next to the outer rail, and between it and the elevated railroad pillars, a trench, about 3½ feet in width and 3 feet and 1 inch in depth, was excavated.  At the time of the accident the trenches had been thus completely or partly opened down to 104th street, and the work was in progress in various stages of completion between that point and 124th street.  On commencing the work at each intersecting street, the southerly half of the street was barricaded, and cross-town travel was confined to the northerly half.  When the contract work on the southerly half of the intersecting street was completed, the trenches were bridged over, and that part of the street was thrown open to public travel.  Each of the so-called bridges consisted of five timbers 6 by 12 and 30 feet in length, extending from the elevated railroad pillars in the middle of the street southerly to or across the crosswalk.  The evidence indicates that from a railing placed across the southerly end of the bridge next the open trench a rope was extended on either side to the elevated railroad pillar next southerly.  The northerly half of the street was then barricaded by a rope running from the elevated railroad pillar in the middle of the intersecting street upon either side of the car tracks to the next northerly pillar of the elevated road.  The trenches across the northerly half of the street were then excavated, and the work proceeded with.  This was the method employed along the entire work, and at the time of the accident this was the condition of the crossing at 105th street and at each intersecting street between 104th and 124th streets, except that there were not elevated railroad pillars at some of the crossings.  In each block the trenches were open between the southerly end of the bridge at one street and the northerly end of the bridge at the next street to the south, and a rope extended this entire distance along the line of the elevated railroad pillars upon either side.  The work across the southerly half of 105th street was commenced on the 11th of November, and it had been completed, and the bridge erected, on the 14th; but the bridge was not completed until the 15th.  The work across the northerly half was under way, and travel thus cut off therefrom, but the trench in that part of the

street had not been excavated to the full depth.  The evidence on
the part of the contractors indicates that it was customary at night
to suspend a red lantern from each elevated pillar in the middle
of intersecting streets and from the rope upon either side midway
between the pillars along the line of excavation.  The plaintiff en-
tered the car at 87th or 88th street, accompanied by her sister, who
paid their fare as passengers.  The sister testified: "We rode on
the car to 105th street.  When we got to 105th street, I told the
conductor to stop the car.  He stopped it."  Plaintiff testified that
her sister told the conductor to let them off at 105th street, and
with respect to where the car stopped she said: "It must have been
below the crosswalk.  I do not know where it stopped.  I did not
see it stop.  I did not know where it stopped at the time."  This is
substantially the only evidence as to where the car stopped.  They
both testified that the car came to a full stop, and that plaintiff
preceded her sister in alighting.  It was an ordinary closed car,
and plaintiff alighted from the rear platform on the right-hand or
easterly side.  The plaintiff testified that no warning was uttered
to her by the conductor or any one; that she did not remember
where the conductor was; that she looked ahead of her when she
came out, and did not see the trench, or any rope or red lanterns,
such as are used about excavations; and that as she stepped from
the car she felt herself "going through the air and disappearing."
The testimony of the sister shows that when she came out on the
platform the conductor told her to look out, and caught her by
the arm; that she was following behind the plaintiff, whom she
saw step off and disappear in the trench, but that she did not hear
the conductor say anything to the plaintiff.  Although the car was
lighted, the evidence showed that it was very dark where the plain-
tiff stepped off.

It is contended by the contractors that the plaintiff was guilty
of contributory negligence.  It is plain that that was a question
for the jury.  Scanlon v. City of Watertown, 14 App. Div. 1, 43 N.
Y. Supp. 618.  It will be observed that the evidence does not show
definitely where the car stopped.  The counsel for the railroad com-
pany contends that it stopped at the north crosswalk, and the coun-
sel for the contractors claims that it stopped either above or below
the bridge which covered the trench across the southerly half of
105th street.  It is manifest that when the car stopped the rear
platform was not opposite the bridge, but was opposite the open
trench into which plaintiff was permitted to step in the darkness
of the night.  The railroad company did not call its conductor or
motorman, or account for their absence.  In these circumstances
the jury were warranted in finding negligence on the part of the
railroad company either for stopping the car opposite the open
trench, and by implication inviting plaintiff to alight therefrom with-
out notice or warning, or for not properly guarding the trench
which it had caused to be excavated in a public street for its own
benefit.  Maverick v. Railroad Co., 36 N. Y. 378; Storrs v. City
of Utica, 17 N. Y. 104, 72 Am. Dec. 437; Pettingill v. City of Yonk-
ers, 116 N. Y. 558; Deming v. Terminal Ry. (decided by court of

appeals, Dec. 10, 1901, and reported in New York Law Journal, Dec. 14th) 61 N. E. 983. Of course, the doctrine of respondeat superior would not apply, and the railroad company would not be liable for the negligent acts of the contractors or their servants in the immediate performance of the work (Blake v. Ferris, 5 N. Y. 48, 55 Am. Dec. 304; Pack v. Mayor, etc., 8 N. Y. 222; Kelly v. Mayor, etc., 11 N. Y. 432); but that would not relieve the railroad company from its duty to the public to exercise reasonable care to guard the excavation.

The contractors urge their exceptions to the refusal of the court to nonsuit and direct a verdict as to them upon the ground that they were not guilty of negligence. Their contract with the railroad company required them to place and keep at night along the line of the excavation suitable and sufficient lights, and to at all times place and keep suitable and sufficient guards, and take all other proper precautions for the prevention of accidents. They claim that their entire duty to people boarding or alighting from cars was discharged by the construction of the bridge as described, which they say constituted proper facilities for the discharge of people from the street cars. The evidence showed that the customary place for north-bound cars to stop was at the northerly crosswalk of the intersecting streets, and that the division superintendent and engineer in charge of the construction for the contractors were familiar with this custom. With the exception of the bridge, which was only about the length of a car, the trenches were entirely open and unprotected except by the ropes and lights, which were on the outside or sidewalk side. The evidence would have justified the jury in finding that this car was stopped with the rear platform not far from the northerly or southerly end of the bridge. We think it cannot be said as matter of law that the contractors discharged their entire duty in covering the trench for this short space, leaving the safety of the passengers desiring to alight to depend upon the accuracy of the judgment of a motorman in endeavoring to stop the car at night so that the rear platform would be opposite the bridge. The record contains no evidence of a license from the proper authorities to the street railway company or to the contractors to open this street, but the question was not raised upon the trial, and it appears to have been assumed that the work was lawful. Naughton & Co. were not the servants or agents of the railway company, but were independent contractors. In thus excavating and leaving open trenches in a public street, they owed a duty to the traveling public, including those desiring to alight from street cars, to exercise reasonable care to guard the trenches, or give them notice or warning of the danger. Blake v. Ferris, 5 N. Y. 48, 55 Am. Dec. 304; City of Buffalo v. Holloway, 7 N. Y. 493, 57 Am. Dec. 550; Charlock v. Freel, 125 N. Y. 357, 26 N. E. 262; Rosenhain v. Galligan, 5 App. Div. 49, 38 N. Y. Supp. 713; Sexton v. Zatt, 44 N. Y. 430. They recognized this duty, and attempted to perform it by the construction of the bridges, the erection of the ropes, placing lights and stationing a watchman at night at each intersecting street, and employing a roundsman

to patrol the street to see that the watchmen performed their duty. The watchman at this crossing was not called, but evidence was given tending to show that the contractors were unable to locate him. It was his duty, according to the testimony of the division superintendent, "to specially look after this open place here, because people would cross there, wagons .would cross, cars come along. The regular place of stopping cars was on the north crosswalk going north. There was not any north crosswalk there, so that the watchman had to look lively. The trench ran right up close to the car. All night, if there was any crosswalk, the watchman's duty was to try to prevent accidents along the line of the trench." It further appeared that it was the duty of the watchmen to look after the lights between as well as at the crossings, and this duty sometimes called them away from the crossing. The roundsman testified that there were six lights at this crossing, one at each corner, making four in front of the trench, and two between the tracks; that in making his rounds he passed the crossing two or three times that evening, and observed that these lights were burning. The division superintendent testified to the custom of placing the lights, but did not remember whether he saw the lights there on the night of the accident. The engineer also testified to the custom, and said that in November they began to put the lights on at about half past 5; that he did not notice anything wrong with the lights, but that he had no special charge concerning them, except to report if he discovered anything out of order; and that he left the work between 4 and 5:30 p. m.

An exception was taken to the refusal of the court to charge that the contractors were not bound to exercise care to prevent persons from stepping off the car into the trench, if they had provided proper bridges for the passengers to alight upon. The court had specifically charged that the contractors were not liable if they sufficiently guarded the trench with lights. The question as to whether there were any lights at the time of the accident was in controversy. The purpose of this request was to have the jury instructed that, if suitable and sufficient bridges were provided to enable those in charge of the street cars, by the exercise of ordinary care, to stop the cars with the platform opposite these bridges, and enable the passengers to alight in safety, then the contractors had fully discharged all obligations resting upon them. We are of opinion that this request should have been charged, and the refusal was prejudicial error, which requires a reversal of the judgment as against the contractors.

The plaintiff alleged that by reason of the fall her ankle and wrist were sprained, and that she received bruises about her body and limbs, "and, as she is informed, injuries of an internal nature, which may be permanent." No motion was made to have the complaint made more definite and certain as to the injuries, and no bill of particulars thereof was furnished. She testified that she was lifted out of the trench, taken to the corner of 105th street, and placed in a chair; that her left hand was bleeding; that she could not step on her right foot very well, and had pain in her abdomen; that she was

assisted to her brother's drug store at the corner of 105th street and 2d avenue, and was then suffering from much pain in her hand, foot, and abdomen; that she was then taken to No. 231 106th street, where she resided, and was undressed, and put to bed; that she did not rest well, and suffered pain during the night in her abdomen and all over her body; that she was bruised on her thigh, wrist, and hands; that she was confined to her bed about five weeks, and suffered similar pain during all that time; that she was confined to her house seven or eight weeks, and since that time continued to suffer pain in her abdomen and back; that at her menstrual period the pain was such that she was unable to arise. She then was permitted to testify, under objection and exception, taken by both appellants, upon the ground that it was not pleaded, that she also had suffered headaches, and was unable to retain food for several days; that she never before the accident had any such ailment or pain in her abdomen; that prior to the accident her menstruation was regular, but that it has been sometimes irregular since. Her attending physician, who was called the morning after the accident, after describing the external bruises and injuries, testified, under similar objection and exception by appellants, and the further objection that the injuries were not shown to have resulted from the accident, that he examined plaintiff internally also, and found her suffering from inflammation of the womb, and that a week before the trial he found her suffering from chronic inflammation of the womb; that an operation known as "curetting the womb" is required and necessary, and was advised by him, to heal this ailment. A specialist in gynecology was called, and testified that on an examination made shortly before the trial he found plaintiff suffering from chronic inflammation of the womb, and that the uterus was more or less fixed in the pelvis by adhesion resulting from the inflammation; and he was permitted to testify, under like objections and exception, that the proper treatment for her relief was a curetting operation, and also the opening of the abdomen, and breaking up or removal of the adhesion. The evidence failed to show that plaintiff's injuries were permanent, and the court instructed the jury that she should only be awarded fair and reasonable compensation for the pain and suffering she has endured, and that she should not recover any damages for future pain and suffering. Counsel for the railway company then requested the court to charge the jury that they could award no damages for injury to the womb, it not having been shown that they resulted from the accident. This was declined, and both appellants excepted. The appellants urge a reversal upon these exceptions.

The allegations of the complaint are sufficiently broad to include the injuries to the womb. Ehrgott v. Mayor, etc., 96 N. Y. 278, 48 Am. Rep. 622; Tracey v. Railway Co., 49 App. Div. 197, 63 N. Y. Supp. 242. The testimony of the plaintiff to the effect that from the moment of the accident she has suffered pain in the abdomen such as she never experienced before was sufficient, if believed by the jury, in the light of the medical evidence, to warrant the inference that the pain emanated from the womb, and that the inflammation of that organ disclosed by the medical examination resulted from the accident.

If the plaintiff had submitted before the trial to the operations which the physicians advised, and one characterized as the treatment "necessary" and "required," and the other as "proper," to relieve her pain, and the jury believed that a reasonably prudent person would have submitted to the operation, the plaintiff could have recovered therefor; and it appearing that without such operations the pain would continue indefinitely, and such operations are common, and usually successful,—we think the evidence was competent. Blate v. Railroad Co., 44 App. Div. 163, 60 N. Y. Supp. 732; Cumming v. Railroad Co., 38 Hun, 362; Alberti v. Railroad Co., 118 N. Y. 77, 23 N. E. 35, 6 L. R. A. 765; Feeney v. Railroad Co., 116 N. Y. 375, 382, 22 N. E. 402, 5 L. R. A. 544; Griswold v. Railroad Co., 115 N. Y. 61, 21 N. E. 726, 12 Am. St. Rep. 775; Strohm v. Railroad Co., 96 N. Y. 305; Filer v. Railroad Co., 49 N. Y. 42. Furthermore, the jury having been explicitly instructed—more favorably to appellants than the circumstances warranted—that plaintiff was not entitled to recover for any future pain or suffering, and the charge having confined the award for pain and suffering to the period preceding the trial, it does not appear that appellants were prejudiced by this evidence.

We have examined the other exceptions, but they do not require extended consideration. The appellants also press their motion for a new trial on the ground that the damages awarded are excessive. Plaintiff was a married woman, 29 years of age; and according to her evidence, which was supported by the testimony of the physicians, and accepted as truthful by the jury, she suffered much pain during the period of nearly two years and a half from the date of the accident to the time of the trial. We would not be justified in granting a new trial or reducing the verdict upon this ground.

These views lead to the conclusion that the judgment and order should be affirmed, with costs, as against the street railroad company, and reversed, and a new trial granted, as to the contractors, with costs to them to abide the event. All concur.

---

(68 App. Div. 488.)

CITY OF BUFFALO v. DELAWARE, L. & W. R. CO.

(Supreme Court, Appellate Division, Fourth Department. January 7, 1902.)

1. EASEMENT—ACQUIREMENT BY PRESCRIPTION—SUFFICIENCY OF USE.
    Where municipal authorities regulated to some extent the repair of certain docks, but private persons owning them continuously used them for private purposes in such a way as to almost wholly interrupt any public right of way, the municipal regulations and a limited public use were not a sufficient claim of ownership or right of user to ripen into an easement by prescription.

2. DEDICATION—ACTS CONSTITUTING—ACQUIESCENCE.
    Acquiescence by the owners in the municipal regulations did not constitute a dedication.

3. SAME—REVOCATION.
    Where land is dedicated to a municipality for use as a street, a subsequent transfer of the same land by deed to a private party before acceptance of the dedication is a revocation thereof.