No. 24,784.

ELIZABETH KENNEDY, *Appellee*, v. FRED W. FLEMING and FRANCIS
M. WILSON, Receivers of the KANSAS CITY RAILWAYS COMPANY,
*Appellants*.

SYLLABUS BY THE COURT.

1. DAMAGES—*Injuries in Alighting from Street Car—Negligence for the Jury*.
In an action for damages sustained by the plaintiff in alighting from a street
car, *held*, that the evidence was sufficient for a submission to the jury on
the question of defendant's negligence.

2. SAME—*Carrier of Passengers—Must Exercise Highest Degree of Care for
Safety of its Passengers*. The duty imposed upon carriers for hire, including
street railway companies, to exercise the highest degree of care practicable
for the safety of their passengers, includes an obligation to provide facilities
for alighting from cars without danger.

3. COMMON CARRIERS—*Must Provide Safe Place for Passenger Leaving and
Alighting from Car*. The obligation of the carrier of passengers continues
not merely while the passenger is being received and being carried, but also
while he is leaving or alighting from the carriage or car, and an electric
railway company operating its cars on tracks in a city over a street in which
excavations adjacent to the tracks were being made by the city, is liable
for injuries received by a passenger in getting off a car where no notice or
warning of the excavation was given to the passenger.

Appeal from Wyandotte district court, division No. 1; EDWARD L. FISCHER,
judge. Opinion filed December 8, 1923. Affirmed.

*E. S. McAnany, M. L. Alden, T. M. Van Cleave, O. L. Miller*, and *C. C.
Glandon*, all of Kansas City, for the appellants.

*Arthur J. Mellott*, and *William E. Carson*, both of Kansas City, for the
appellee.

The opinion of the court was delivered by

HOPKINS, J.: The action was for damages sustained by the plain-
tiff in alighting from a street car. It was originally filed against
the receivers of the Kansas City Railways Company, the city of
Kansas City, Kan., and G. G. Roudebush, a contractor. At the
commencement of the trial the plaintiff dismissed her action as to
all defendants except the receivers of the railways company who are
operating street-car lines in Kansas City, Mo., and Kansas City
Kan. The plaintiff recovered, and the defendants appeal.

The injury occurred on Ruby avenue, a public street in the Ar-
gentine district of Kansas City, Kan. Previous to and at the
time of the injury, Ruby avenue was being repaved. On the morn-

ing of the 13th of June the plaintiff and her 11-year-old son boarded an east-bound car at 20th and Ruby avenue. In the evening of the same day they boarded a 9 o'clock car at South Park, a suburb of greater Kansas City, and transferred at 12th and Main streets to an Argentine car, on which car they arrived at 20th and Ruby avenue at about 10:30. When the car upon which she was riding reached the regular stopping place at 20th street, plaintiff notified the conductor of her desire to alight. The car was brought to a stop near the usual place about 50 feet east of the corner of 20th street. When the car was brought to a stop the conductor opened the gates. Plaintiff proceeded to get off and was injured.

The defendants contend that there was a total lack of testimony on the part of the plaintiff showing liability of the defendants. The evidence showed that the old pavement of Ruby avenue was being excavated for the laying of a new one; that the pavement was intact at the place where the plaintiff and her son boarded the car in the morning; that they did not notice that there had been an excavation of the pavement on the other side of the street. It showed that in taking up the old pavement a steam shovel was operated, which excavated about two blocks of pavement per day; that it had been taken up at 20th and Ruby avenue either on the day the injury occurred, or, perhaps, before; that the conductor operating the car on which the plaintiff returned home had been running over that road every day for a week and a half and had been over it three or four times that afternoon; that when plaintiff, in approaching her destination, indicated her desire to get off, the car stopped and the conductor opened the gates. He did not in any way advise the plaintiff of the excavation or of the greater distance to step down, and in no way assisted her in alighting; that the nearest street light was approximately 100 feet distant; that she proceeded to step off in the usual way and fell prostrate, face downward; that the sidewalk was about 10 feet distant from the car track; that 12 or more inches of the pavement had been excavated, leaving the distance from the car step to the ground approximately 2½ feet; that plaintiff's face struck some rocks or the pavement, knocking out some of her teeth and otherwise severely injuring her; that the fall rendered her unconscious.

It is the contention of the defendants that the plaintiff may have safely alighted from the car and afterwards stepped into a hole which caused her fall. The testimony, however, was ample to war-

rant the inference that her fall was caused by stepping or falling down a distance of a foot or a foot and a half farther than she expected to find a footing on the pavement. Direct proof of negligence is not essential to a recovery. It may be established by circumstantial evidence. Considering all of the circumstances, the evidence was ample for submission to the jury on the question of defendant's liability.

A street railway company engaged in carrying passengers for hire must provide reasonable means for ingress to and egress from its cars. The perils surrounding a passenger in getting on and off a street car are not materially different from those encountered in getting on and off railway trains. The duty imposed upon carriers for hire to exercise the highest practicable degree of care for the safety of their passengers (10 C. J. 858), includes an obligation to provide facilities for alighting from cars without danger. The plaintiff on reaching her destination was entitled to the necessary facilities to enable her to alight with safety. It was the duty of the company to warn her or to provide a means whereby she could step down without injury.

In *Railway Co. v. Wood*, 66 Kan. 613, 72 Pac. 215, it was said:

"Circumstantial evidence in a civil case, in order to be sufficient to sustain a verdict, need not rise to that degree of certainty which will exclude every reasonable conclusion other than the one arrived at by the jury."

In the opinion it was said:

"There was no railing about the platform. Mrs. Wood was at the time suffering from diarrhea. Soon after the parties had entered the waiting-room Mr. Wood heard cries from his wife from the outside. This was the first he knew that she had left the room. He responded immediately, and found that she had fallen from the platform south of the east door of the waiting room, and in the fall had sustained severe injuries. This was all the evidence in the case bearing upon the question of how the accident occurred. The defendant in error was awarded a verdict by the jury." (p. 614; see, also, *Mo. Pac. Rly. Co. v. Neiswanger*, 41 Kan. 621, 21 Pac. 582; *Hashman v. Gas Co.*, 83 Kan. 328, 111 Pac. 468; *Lupher v. Railway Co.*, 86 Kan. 712, 122 Pac. 106; *Leonard v. Cement Co.*, 91 Kan. 735, 139 Pac. 478; *Watkins v. Harper County*, 95 Kan. 166, 147 Pac. 822; *Curtiss v. Reaume*, 100 Kan. 531, 164 Pac. 1089; *Lane v. Insurance Co.*, 113 Kan. 365, 214 Pac. 92.)

In *Ft. Wayne Traction Co. v. Morvilius*, 31 Ind. App. 464, it was said:

"The strict obligation of the carrier of passengers continues not merely while the passenger is being received and being carried, but also while he is leaving or alighting from the carriage or car; and an electric railway company operating its cars on tracks in a city over a street in which excavations

were made by the city adjacent to the tracks is liable for injuries received by a passenger in getting off a car stopped to let off passengers opposite such excavation, where no notice or warning was given the passenger of the excavation." (Syl.)

It was also stated in the opinion:

"Common carriers of passengers, including street railway companies, are bound to exercise the highest degree of care and skill and the utmost foresight in the performance of their duty as carriers in receiving, transporting, and discharging their passengers, and are responsible for any injury to a passenger through neglect of any reasonable precaution for the prevention of such injury. *Citizens St. R. Co. v. Twiname*, 111 Ind. 587." (467.)

In *McDonald v. St. Louis Transit Co.*, 108 Mo. App. 374, it was said:

"A passenger on a street car retains that character, and is entitled to a high degree of care from the company's servants, until he has alighted and obtained a safe footing on the street. And where such passenger exercising ordinary care falls and is injured immediately after alighting, by reason of being landed in an unsafe place, the company is liable for the injuries." (Syl. ¶ 4.)

In *Flack v. Nassau Elec. R. R. Co.*, 41 N. Y. (App. Div.) 399, it was said:

"Where the effect of lowering the grade of a street, in which a street railway is operated, is to leave the railway resting upon the top of an embankment eighteen or twenty inches higher than the general surface of the street in that vicinity, and the railway company has been made aware, by the happening of accidents to passengers while alighting upon the embankment, that the change in the street grade has created a condition of danger, it is bound to warn, against such danger, a passenger about to alight on the embankment at a point where the edge is six or seven inches beyond the step of the car, and where the side of the embankment slopes outward to a point at the bottom two and one-half feet beyond the car step, although the change of grade was not effected through the agency of the railway company, but through that of the city authorities. The failure to give such warning renders the railway company liable for personal injuries sustained by the passenger in consequence of the soil of the embankment giving way beneath her feet, causing her to fall to the surface of the street."

In *Sowash v. Consolidated Traction Co.*, 188 Pa. St. 618, it was said:

"In an action against a street railway company by a passenger to recover damages for personal injuries, the case is for the jury where there is evidence that a portion of the track was torn up so that it was necessary to transfer the passengers from the car in which they had been riding to one some distance ahead; that when the plaintiff, a woman, was about to leave the car the motorman opened the front door of the car and invited her to leave at the

car by that way; that she followed his direction and descended to the ground from the steps of the front platform; that the ground was broken and the night dark, and that within a very few steps she caught her foot in some way, fell to the ground and sustained injuries."

In *Richmond City Railway Co. v. Scott,* 86 Va. 902, it was said:

"Such carriers bind themselves to carry safely those whom they take into their coaches, to the utmost care and diligence of very cautious persons; and this contract includes the duty of giving passengers reasonable opportunity to alight in safety from the train, and a violation of such duty is culpable negligence, for which an action will lie." (See, also, 10 C. J. 926; *Sweet v. Louisville Ry. Co.,* 113 Ky. 15, 23 Ky. L. 2279; *Bass v. Street Railway,* 70 N. H. 170; *Wolf v. Third Ave. R. Co.,* 67 App. Div. 605, 74 N. Y. Supp. 336; *Chicago Terminal Transfer R. R. Co. v. Schmelling,* 99 Ill. App. 577 [Aff. 197 Ill. 619, 64 N. E. 714]; *Rearden v. Railroad,* 215 Mo. 105; *Kearney v. R. R.* 158 N. C. 521; *Missouri Pacific Ry. Co. v. Long* 81 Tex. 253, 26 Am. St. Rep. 811.)

Various other complaints are made, including the giving of instructions; that the verdict was contrary to the evidence; and overruling defendant's motion for a new trial. We have considered all of the objections but find nothing to warrant a reversal.

The judgment is affirmed.