64 539
68 610
165s 496

## West Chicago Street Ry. Co. and North Chicago Street Ry. Co. v. Annie K. Cahill.

1. COMMON CARRIER—*Duty Toward Passengers.*—It is as much the duty of a carrier of passengers to provide them with reasonably safe places to alight, as it is to carry them in safety to their stopping places.

2. NEGLIGENCE—*Things to be Considered in Determining.*—The fact of inviting a passenger to get off at a dangerous place by stopping there, and having stopped and seen such passenger alight in what must have been known to the conductor as a place full of perils, giving no warning or caution, are matters to be considered by the jury in determining the question of negligence.

**Trespass on the Case,** for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. RICHARD W. CLIFFORD, Judge, presiding. Heard in this court at the March term, 1896. Affirmed. Opinion filed June 11, 1896.

EGBERT JAMIESON and JOHN A. ROSE, attorneys for appellants.

DAVID J. WILE, attorney for appellee.

MR. JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

This is an action by Annie Kennedy-Cahill to recover damages for personal injuries alleged to have been sustained by reason of the joint negligence of the West Chicago Street Railroad Company and the North Chicago Street Railroad Company. The declaration alleges that on the eighteenth day of February, 1893, the plaintiff became a passenger on one of the defendant West Chicago Street Railroad Company's Halsted street cars, and that when the car reached the southern end of the viaduct at Halsted and Sixteenth streets, the defendant West Chicago Street Railroad Company's servants negligently stopped said car and invited the plaintiff to alight, and that while the plaintiff, relying upon such invitation, was attempting to alight from said car, the defendant North Chicago Street Railroad Company, by its servants, negligently ran against the plaintiff with a north-bound car, and thereby caught the plaintiff between said north-bound car and the one from which said plaintiff was attempting to alight, in consequence of which the plaintiff was crushed between the two cars. At the trial the jury returned a verdict in favor of the plaintiff, and assessed her damages at the. sum of two thousand dollars. Judgment having been entered on this verdict, the defendants appeal.

No instructions to the jury were asked by the appellee, and no complaint is made because of the refusal of any that were offered in behalf of appellants. The accident happened on the Halsted street viaduct which crosses some railway tracks a little north of Sixteenth street, which street intersects the southern approach to the viaduct not far from its southern end, and the hour was between seven and eight o'clock on a winter's evening, described as being dark and stormy. The appellee was a south-bound passenger in one of the West Chicago Company's cars, and her destination was Sixteenth street.

The viaduct was about 175 feet long, and was divided into two roadways of equal width, by an iron truss running north

and south throughout its length. The viaduct was what a civil engineer, who testified, called a "riveted lattice-trussed bridge, or a pony bridge."

As we understand the evidence, there were trusses which separated the roadways from the sidewalks on either edge of the bridge, as well as the one that extended through it lengthwise, so that a person desiring to pass from one roadway to the other, or from either roadway to the sidewalk, must pass through or under the lattice-work of angle iron, tie rods and plates, which formed the trusses.

The height of these trusses was five feet one and one-half inches above the floor level of the bridge, of which distance ten inches was occupied by what is called the wheel guard on each side of the roadways.

These trusses were divided into panels fourteen feet and nine inches long from center to center of the upright posts which formed their ends, and in the middle of each panel there was an angle, formed by tie rods, which was seven feet and four inches in length at its base, and three feet and six inches in height from its apex to the deck of the bridge, through which a person could pass by first stepping up on the wheel guard, which lessened the height of the angle by ten inches, and then proceeding in a stooping posture.

We have thus particularly described the trusses because of the contention by appellants that appellee should have passed through them after leaving the car.

The roadways into which the viaduct was divided by the middle truss were used for general traffic as well as for street car tracks, there being usually but one track in each.

At the time in question, however, the west roadway was closed to all traffic, because of certain work being done to change the track therein so as to adapt it to cable power; and in order that the car traffic might not be suspended, an additional track for temporary use was laid in the east roadway so that cars going in both directions might pass in that roadway. South-bound cars passed on the west or old track, and north-bound cars on the temporary track.

Owing to the narrowness of the roadway, this temporary track had been laid to within a distance of forty and one-

half inches of the regular track, and it was proved that taking into account the distance that ordinary cars project beyond or overhang the track, there would be left a distance of less than a foot between the guard rails of two cars that should meet on those tracks. These tracks were operated jointly by the two appellant companies.

The appellee was bound for Sixteenth street, and when a block or two north of the viaduct, requested the conductor of the car to let her off at that street. Approaching that street, the car stopped on the viaduct, but close to where the incline downward of the southern approach to it began, and the appellee, in the presence of the conductor, who was standing upon the rear platform of the car, stepped off the car without any warning or caution from him. Before alighting she stepped to the west side of the platform, intending to get off on that side, but finding the car close up to the truss that runs through the middle of the viaduct, she turned and got off on the other side between the track she had been riding on and the temporary track. It was then dark and stormy, and she remonstrated with the conductor for stopping to let her off in such a place, but received no reply except to the effect that he could not help it.

The appellant having so alighted from the east side of the north, or rear platform, proceeded to walk south between the tracks, and alongside of the car, towards Sixteenth street. Just as she reached the south, or front end of the car, another car drawn by three horses abreast, suddenly came upon her from the south. This last car belonged to the appellant North Side Company. There was not space for her safely to stand between the three horses abreast and the car from which she had alighted, and she was struck by one of the horses and then by the corner of the car they were hauling, and thrown against the car she had been riding in, and thereby injured.

It is insisted by appellants that the appellee should have got off on the west side of the car and passed under the lattice-work to the west roadway, where she would have been in a place of safety; and that appellee having elected to take the other course, and having got off and started to walk between

the tracks, she did so at her peril; that from thencefor-ward the peculiar duty of appellants to her as a passenger was ended, and her and their respective rights and duties were equal, and that her contributory negligence, in what afterward happened, relieved them from liability to her.

It is manifest from the description already made of the construction of the truss that it would have been a difficult thing, under the most favorable circumstances, for a woman carrying parcels in her arms, as appellee was doing, to have alighted from the west side of the car platform and crawled through or under the angle in the truss. She testified that when she started to get off on that side she found the truss close up to the car, and other evidence in the case showed that the side of the car was within but a few inches of the truss, and that it would have been a difficult thing to have walked in the dark between the car and the truss. More-over, it was shown that the west roadway was closed up to traffic, by barricades at its ends, and under such circum-stances, if it had been a much easier matter to have passed through the truss, it would not have been incumbent upon appellee to have gone in the dark upon the roadway, against the use of which such warnings existed. We do not think appellee was under any duty, under the existing conditions, to have tried to pass through the lattice of the truss.

Appellee had been accepted as a passenger, and had given notice to the conductor of the place at which she wished to alight. He knew, at the time he stopped and saw her alight, and heard her remonstrance and made his reply, that the place was a perilous one, and it was his duty to have warned her of the danger she was running (of the presence of which he had knowledge,) of meeting a car, which, coming up the grade of the approach to the viaduct, would be drawn rapidly by three horses abreast, and would occupy all the space of the roadway between his car and the truss on the east side of the viaduct.

It is as much the duty of a carrier of passengers to pro-vide them with reasonably safe places to alight as it is to carry them in safety to their stopping-place. C. & A. R. R. Co. v. Wilson, 63 Ill. 167 ; C. & N. W. Ry. Co. v. Drake,

33 Ill. App. 114; Maverick v. Eighth Ave. R. R. Co., 36 N. Y. 378.

Whether inviting the appellee to get off on the viaduct by stopping there, or whether having stopped and seen her alight without any warning or caution, in what must have been known to the conductor was a place full of peril to one in the dark, and whether knowing, as the driver of the approaching car did, that the other car was at a standstill and liable to be discharging passengers, he was justified in driving rapidly up alongside of the standing car, were all matters that the jury were entitled to consider in determining the question of appellants' negligence, and their finding in regard to them must be considered as final.

The point is made, but no authority is cited in support of it, that the joint verdict and judgment against the two appellants can not be sustained.

We understand the law to be that where two or more are jointly concerned in an act which produces the resulting injury, they may be sued jointly. Teazel v. Alexander, 58 Ill. 254; Wabash, St. L. & P. Ry. Co. v. Shacklet, 105 Ill. 364; C., M. & St. P. Ry. Co. and C. & N. W. Ry. Co. v. Snyder, 27 Ill. App. 476; same case, 128 Ill. 655.

As to the extent of the injuries received by the appellee, the jury were the best judges of the evidence upon that subject, and the amount of their verdict for $2,000 indicates that they were not actuated by prejudice against the appellants or undue impartiality for the appellee.

There was no improper evidence received, and we see no cause for reversing the judgment. It will therefore be affirmed.