## MACDONALD, Respondent, v. ST. LOUIS TRANSIT COMPANY and ELECTRIC LIGHT and POWER COMPANY, Appellants.

St. Louis Court of Appeals, November 29, 1904.

1. **PLEADING: Misjoinder of Causes: Waiver.** The error of a trial court in overruling a demurrer to a petition for misjoinder of causes of action cannot be reviewed in the appellate court unless the attention of the trial court was called to the ruling by motion for new trial.

2. **CARRIERS OF PASSENGERS: Contributory Negligence: Passenger Alighting.** In an action against a street railway company for injuries received by a passenger while alighting from a car of the defendant, where the evidence showed that the car stopped adjacent a ditch which was filled with water, so that its outlines were obscured, and the plaintiff was a heavy woman who found it necessary in descending from the car to hold to the hand bar and step down with her face towards the car, and in doing so, stepped into the ditch and was injured, the issue of her contributory negligence was properly submitted to the jury.

3. ———: **Negligence in Discharging Passengers.** If the ditch where the passenger was obliged to alight was entirely covered

MacDonald v. St. Louis Transit Co.

with water and indistinguishable from the flooded surface of the street, it was a question for the jury to determine whether the carmen were negligent in stopping the car at that place without giving warning of the danger, and it was error in the trial court to instruct the jury that the failure of the carmen to warn the plaintiff of the danger of falling into the ditch was no evidence of negligence on the part of the defendant.

4. ———: ———: **Safe Landing.** A passenger on a street car retains that character, and is entitled to a high degree of care from the company's servants, until he has alighted and obtained a safe footing on the street. And where such passenger exercising ordinary care, falls and is injured immediately after alighting, by reason of being landed in an unsafe place, the company is liable for the injuries.

5. **EXCAVATION IN STREET: Duty to Guard.** A lighting company which excavates a ditch in the street which, by a city ordinance, it is required to guard, is not excused from fencing it because it is impracticable to fence or guard it in a manner usual for such ditches.

6. ———: ———: **Liability.** It is gross negligence to leave such a ditch unguarded and such lighting company is liable for injuries received by a passenger who, exercising ordinary care, steps into it when alighting from a street car at a time when the outlines of the ditch were obscured by water.

7. **PRACTICE: Instructions: Negligence.** In an action by a passenger for injuries received by stepping into a ditch while alighting from a street car, brought against both the street railway company and the lighting company which excavated and left unguarded the ditch, where the evidence showed the outlines of the ditch were obscured by water from a recent rain, the plaintiff had a cause of action against the street railway company if she, while exercising ordinary care, was discharged at an unsafe place and not warned by the carmen in control of the car; the negligence which plaintiff must show in order to recover was stopping the car at a dangerous place, inviting her to get off there and failing to warn her of the danger. It was error to authorize a recovery in case the jury should find that the carmen, by high care in the *management* of the car, could have prevented plaintiff from falling into the ditch.

8. **PERSONAL INJURIES: Damages: Services of Nurse.** In an action for damages for personal injuries to plaintiff, where the evidence showed that the plaintiff was nursed by her daughter who was not shown to be an expert nurse, it was error to permit evidence of the price charged by trained nurses for such services.

Appeal from St. Louis City Circuit Court.—*Hon. Robert M. Foster,* Judge.

REVERSED AND REMANDED.

*Boyle, Priest & Lehmann, George W. Easley* and *Edward T. Miller* for appellant Transit Company.

(1)   The court erred in overruling appellant's demurrer to plaintiff's evidence, and in refusing its peremptory instruction asked at the close of all the evidence.   Young v. Railway, 93 Mo. App. 267; Bascom v. Railroad, 102 Mo. App. 430, 76 S. W. 697; Lynch v. St. Louis Transit Co., 102 Mo. App. 630, 77 S. W. 100; Haley v. St. Louis Transit Co., 179 Mo. 30, 77 S. W. 731; Wells v. Steinway, 18 App. Div. (N. Y.) 180, 45 N. Y. Sup. 864; Conway v. Railroad, 90 Maine 199, 38 Atl. 110; Chattanooga Electric Railway v. Boddy (Tenn.), 58 S. W. 647; Foley v. Traction Co. (N. J.), 50 Atl. 340; Moss v. Railroad, 57 App. Div. (N. Y.) 587; 11 Am. Neg. 568; Lee v. Railroad (Mass.), 13 Am. Neg. 319; Railway v. Friel (Ky.), 39 S. W. 755; Eckerd v. Railway, 70 Iowa 353.   This case is distinguishable from steam railroad cases and street railroad cases wherein the carrier owns the right of way upon which its tracks and platforms are located.   (2)   The third assignment of negligence, viz., "failure to warn plaintiff of the danger of the excavation," was not supported by any evidence, and was withdrawn from the jury by instruction.   Again, the petition alleges that the car stopped and plaintiff alighted and stood still, and the evidence shows that the car had started on its way when plaintiff fell.   Signar v. Railroad, L. R. 3 Exch. 150; Creamer v. Railway, 156 Mass. 320, 31 N. E. 391.   (3) The court erred in giving plaintiff's instruction 1. Aside from the error that defendant should exercise "a very high degree of care in affording plaintiff a safe

place to leave said car," the instruction is further erroneous in not submitting to the jury any act of negligence charged. As above stated, three negligent acts were pleaded; first, stopping the car at a dangerous place; second, inviting plaintiff to alight there; third, failure to warn her of the danger. The instruction not only permits a recovery on a single ground not pleaded, but erroneously declares that defendant's duty to plaintiff, after discharging her at a regular stopping place, in obedience to her signal, was to exercise a high degree of care and watchfulness to prevent injury to her even after the car had started away. That plaintiff is confined to the specific acts of negligence pleaded, we cite: Marr v. Bunker, 92 Mo. App. 651; Waldhier v. Railroad, 71 Mo. 514; Paddock v. Somes, 102 Mo. 266, 14 S. W. 746; Raming v. Railway, 157 Mo. 506, 57 S. W. 268. That plaintiff could not claim the high degree of care due a passenger after alighting from the car and "standing still" upon the street, we cite Bigelow v. Railway, 161 Mass. 393, 37 N. E. 368. (4) The court erred in giving plaintiff's instruction 3, whereby plaintiff was permitted to recover for "nursing, care and attention." Plaintiff was attended by her daughter Annie, who was unmarried at the time of the accident and lived with her mother, and also by her daughter-in-law. They were the only nurses plaintiff had, and they attended her continuously ten weeks. Buelterman v. Meyer, 132 Mo. 474, 34 S. W. 67; Ratcliff v. Lumpel, 82 Mo. App. 335; Wood v. Flannery, 89 Mo. App. 632; Doan v. Dale, 90 Mo. App. 87; Voorhies on Dam., p. 29, sec. 18.

*Seddon & Holland* for appellant, Union Electric Light & Power Company.

(1) The court erred in overruling the demurrer filed by the appellant Union Electric Light & Power

Company on the ground that there was a misjoinder of causes of action in plaintiff's petition. R. S. 1899, sec. 593; Doyle v. Transit Co., 77 S. W. 471. (2) The court erred in allowing respondent to introduce in evidence, over the objection of this appellant, section 922 of the municipal code, the ground of appellant's objection being that respondent's own evidence showed that it was impossible on this occasion to observe the provisions of said ordinance. Lore v. American Mfg. Co., 160 Mo. 608, 61 S. W. 678. (3) The court erred in refusing to give the peremptory instruction asked by the Union Electric Light & Power Company at the close of all the evidence. Because the respondent sought to recover against the Union Electric Light & Power Company solely on the ground of the violation of section 922 of the municipal code, and respondent's own evidence showed that it was impossible for said company, on the occasion in question, to observe said ordinance.

*James M. Sutherland* for respondent.

The record shows the defendant Union Electric Light Company filed a demurrer to plaintiff's petition October 7, 1903, claiming a misjoinder of causes of action. This demurrer was overruled January 20, 1904, and three days later it filed its answer. By pleading over defendant waived all right to raise the question. In this, defendant's motion for a new trial, this point was not given as a ground upon which it sought a new trial. It now comes too late. It cannot be urged in this court for the first time. Franke v. St. Louis, 110 Mo. 516, 19 S. W. 938.

### STATEMENT.

This is an action to recover damages for an injury received by the respondent in stepping from a street

car of the St. Louis Transit Company. The accident happened near the south crossing of Jefferson avenue at its intersection with Franklin avenue. The hour was about six o'clock, July 29, 1903, and while it was still daylight. Respondent got on the car at Thomas street, five blocks north of Franklin avenue, intending to transfer to another car at the latter street and stepped from the car she was on for that purpose. It is in dispute whether the car stopped right at the crossing. The contention of the Transit Company is that the evidence shows without contradiction the stop was made at the proper place. The only evidence, if any, to the contrary, is the respondent's statement that the car was a little south of the crossing; but she appears to have noticed this after her fall, and the car might have been moved meanwhile. It had running-boards along its sides. The respondent stepped off at the third seat from the front. She says she took hold of one of the upright stanchions with her right hand, faced east, and stepped from the running-board without looking at the ground where her step would take her. Respondent was corpulent and there was some testimony that on account of her weight she was compelled to alight in that manner. She fell into a ditch five feet deep and twenty inches wide, which the Union Electric Light & Power Company had dug along Jefferson avenue parallel to the Transit Company's tracks to lay conduits in. There was some discrepancy in the evidence as to how close this trench was to the Transit Company's west track on which the respondent had been travelling. One witness or more said it was about three feet from the track; but there was other testimony to warrant the inference that it was closer. At any rate, the respondent, according to her statement, fell into it before she observed it. At the crossing of Jefferson avenue south of Franklin, the ditch had not been cut through, but a bridge had been left there four or five feet wide for foot travellers to use. In excavating the ditch an em-

bankment of dirt several feet high had been thrown upon the surface of the street, and of course, both the ditch and the embankment, under ordinary circumstances, would have been within eyesight of the respondent for two blocks before reaching the crossing; but on this day a heavy rain had fallen which flooded the street and filled the ditch so that the latter was concealed, it is said, by the water with which the whole surface of the street was covered.

The action was originally instituted against the St. Louis Transit Company, the Union Electric Light & Power Company, the Seckner Contracting Company and the city of St. Louis, but was dismissed as to the two defendants last named during the trial. The Union Electric Light & Power Company had the ditch excavated and the Secker Contracting Company did the work under contract with the Light & Power Company.

The Union Light & Power Company demurred to the petition on the ground that it contained a misjoinder of causes of action in charging distinct and separate causes of action against the St. Louis Transit Company in inviting respondent to alight in proximity to a dangerous excavation, and a distinct and separate cause of action against the Light & Power Company for negligence in making the excavation and a distinct and separate cause of action against the city of St. Louis for permitting the excavation to remain in the street unguarded. The demurrer was overruled and the Light & Power Company excepted.

The Transit Company filed a general denial and the Seckner Contracting Company and the Light & Power Company filed a joint answer containing a general denial and a plea of contributory negligence on the part of the respondent.

A point is made against the admission of testimony concerning the value of the services of a trained nurse in St. Louis as proof of the value of the services of

the respondent's daughter, who nursed her during her suffering, for which the respondent promised to pay.

GOODE, J. (after stating the facts).—The error assigned on account of the overruling of the demurrer of the Union Light & Power Company to the petition, as containing a misjoinder of causes of action, would demand serious attention if the ruling was reviewable. The acts of negligence charged against the several appellants were entirely distinct and each charge affected only one appellant, thereby raising a separate issue and demanding independent proof. Without passing on this assignment, which is not properly before us, we will cite some decisions which shed light on it. Trowbridge v. Forepaugh, 14 Minn. 133; Kelly v. Newman, 62 How. Prac. 156; Wilson v. Castro, 31 Calif. 420; Pomeroy, Code Remedies, sec. 376. The Light & Power Company answered and, moreover, failed to call the court's attention to the ruling on the demurrer in its motion for new trial.

Both appellants insist that verdicts in their favor should have been directed, and we will therefore treat the main propositions brought forward on the appeal before noticing some minor assignments. To begin with, it is asserted that the respondent was palpably guilty of negligence which contributed to her injury, and if this proposition is maintainable it will exonerate both appellants. It is founded on the alleged fact that the ditch into which the respondent fell was visible to her for a block or two while she was on the car and when she stepped off. The embankment of dirt which ran along the edge of the ditch was unquestionably in sight and the respondent must have observed it if she was not preoccupied. She said she was engaged in conversation with her daughter and took no notice of the ditch or the bank. Besides, we are not prepared to say that seeing the embankment would have notified her the ditch was between the embankment and the

car so that she was in danger of stepping into the ditch when she got off. It could as well have been between the embankment and the sidewalk. But ordinarily its location would have been apparent; and we would be inclined to hold she saw it, but for the positive testimony of some of the witnesses that a heavy rain had fallen during the afternoon and filled the ditch with water to the surface of the street, flooding the street itself and blotting out the outlines of the ditch. Respondent herself swore to those facts and her testimony was confirmed by other witnesses. She was a heavy woman and in descending from the car found it necessary to hold to a stanchion or handbar at the side of the car and to step down with her face toward the car instead of from it. Considering the situation, carelessness cannot be imputed to her for adopting this mode of descent. If the testimony we have mentioned is to be believed, she would have seen nothing to warn her that it was dangerous to step from the footboard to the street, if she had been looking at the street. The issue of her contributory negligence was properly referred to the jury.

It is said by the Transit Company that it had nothing to do with the presence of the ditch in the street and as the car stopped at the crossing, the usual stopping place, it neglected no duty. The testimony is not all one way that the car stopped at the crossing. Some witnesses said it ran south a way. This is rather an immaterial question; for if the car had been stopped exactly at the crossing, its rear would have stood at the crossing and its front, from which the respondent alighted, farther south. In that event, she would not have stepped on the bridge which had been left above the excavation by tunnelling under the crossing. The important inquiry in this connection is as to whether the evidence tended to convict the Transit Company of a lack of due care in stopping the car for passengers to alight at a place where there was a deep ditch which

was overflowed so as to be invisible. If the ditch was entirely covered with water and indistinguishable from the flooded surface of the street, the situation is analogous to what it would have been if the accident had occurred in the dark instead of daylight. It is a fair inference that the carmen intended for the passengers to get off south of the crossing, as the car was constructed so that they might leave it along its entire length and no warning was given against their doing so. It is the custom for passengers to get off that type of cars at the end of the seat they have been occupying. In view of the high degree of care which carriers of passengers must exercise to set them down safely, the jury might find it was negligent to stop the car for passengers to alight at such a place. The question has been decided that way in apposite cases. Ft. Wayne Traction Company v. Morvilius, 68 N. E. (Ind.) 304; Wolfe v. Railroad, 67 App. Div. 605. A very similar accident was involved in both those cases, and the railroad companies were held responsible. In Traction Co. v. Morvilius, the injured party stepped into a ditch parallel with the track when it was dark and the ditch was invisible. The allegation of negligence was that the Traction Company knew of the ditch, or could have known of it, and that its servants in charge of the car allowed Morvilius to alight without warning him of the danger. The ruling was that the carmen should have taken reasonable precautions to prevent him from falling, or have given him warning. On the trial of the present case the learned circuit judge instructed the jury that the failure of the car crew to warn Mrs. MacDonald of the danger of falling into the ditch was no evidence of negligence on the part of the Transit Company. That act was charged as negligence in the petition and this ruling was erroneous. The general rule is that in exceptional circumstances, when a danger can not be observed by a passenger who is about to get off a car, the operatives in charge of the car must

warn him of the danger if they are aware it exists, instead of permitting him to blindly encounter it.   Nellis, Street Railways, p. 155; West Chicago Ry. Co. v. Kennedy, 64 Ill. App. 539, 165 Ill. 496.   We think it was the duty of the conductor or motorman, if he knew of the ditch, to warn or otherwise guard Mrs. MacDonald.   In Wolf v. Railroad, supra, the company had had a trench excavated parallel with its tracks, leaving a bridge at the intersection of the streets, but without fencing or guarding the trench at the point where the accident happened.   The plaintiff, in attempting to descend from the car near a street crossing, fell into the trench.   The conductor of the car neither warned nor protected her when she was stepping off.   On these facts it was ruled that the jury were justified in finding the railroad company was in fault, either in stopping the car opposite the open trench, or in inviting plaintiff to alight without notice or warning, or in not properly guarding the trench.   The first and second grounds of liability are applicable to the Transit Company in the present case.   It was not under obligation to fence the trench, but was under an obligation to use high care to protect plaintiff in setting her down; and it was for the jury to say whether that degree of care was observed in permitting her to alight without notifying her of the danger of falling into the ditch or taking any precaution to prevent such a mishap.

The additional proposition is urged in behalf of the Transit Company, that when Mrs. MacDonald fell into the ditch she had ceased to be a passenger and entitled to a high degree of care from the company's servants, as she had already stepped off the car and was standing on the street.   We recognize the rule of law that after a passenger leaves a car and has a safe footing on the street, the company's duty to him is no longer one of high, but only of ordinary care.   But this presupposes that the passenger has obtained a safe footing on the street; that is to say, has alighted in safety.

Nellis, Street Railways, p. 46. Mrs. MacDonald was injured in the very act of alighting, or so instantaneously after she touched the street that the fall must be regarded as an incident of her descent from the car. It is true she had put her feet on the surface of the ground; but while she stood there, before she had taken a step and while she was still holding to the car, the soil crumbled under her feet and let her into the ditch. We regard the fall as in legal effect the same as if she had stepped directly from the footboard into the ditch. We hold that as she never got a secure footing nor was set down at a place where she could maintain herself, the relation of passenger and carrier was still intact and the liability of the Transit Company is to be tested by the degree of high care.

The Light & Power Company seeks to exculpate itself from blame on the ground that the uncontradicted evidence shows it was impossible to fence or guard the excavation on account of its proximity to the car tracks; that there was no room for a fence, because street cars projected beyond the car rails far enough to strike any fence or guardrail that could be put up. A city ordinance was put in evidence, which required every person who dug a trench in a public street to cause the excavation to be inclosed with a substantial fence, not less than three feet high, to prevent persons and vehicles from falling into the excavation. There is not a line of testimony in the case that street cars projected to the edge of the ditch in question or overhung it. On the contrary, all the evidence is that they did not extend that far from the rails; and it is palpable that a barrier of some kind could have been provided easily, without interfering with the movement of street cars. The ordinance was disregarded and the negligence of the Light & Power Company is unquestionable. The argument of its counsel is that the testimony showed the usual mode of constructing barriers along

trenches and streets was to pile up stones to the height of three feet and extend planks from one pile to another, which could not be done in the present instance. We are far from sure that that mode of guarding the trench was impracticable; but if it was, some other should have been adopted. A rope ought to have been stretched, or a wire, or something to prevent persons from falling into the ditch. It was gross negligence to leave it in the condition it was. The testimony shows other persons besides Mrs. MacDonald fell into the ditch at the same place that afternoon. Wolf v. Railroad, supra, is authority against the Light & Power Company on this proposition. A more elaborate one, in which many decisions are reviewed, is Deming v. Railroad, 169 N. Y. 1.

Turning now to the instructions, we find that the first one given for the respondent failed to present clearly the issues. It left out of consideration the duty of the carmen to give respondent any warning in alighting where she did, which was certainly a matter for the jury's consideration. That was unjust to the respondent. But the instruction told the jury that if they found the place where the respondent was permitted to leave the car was dangerous by reason of the excavation being close to the side of the car, and that the servants in charge of the car, by the exercise of a high degree of care and watchfulness in the management and control of the car, could have prevented respondent from falling into the ditch, the Transit Company was liable. That charge left out of consideration absolutely, as we have said, the failure to warn the respondent and omitted to present the only other acts of negligence charged in the petition, to-wit: stopping the car at a dangerous place and inviting the respondent to get off there. It did not make the right of recovery depend either on the danger of the locality when the car stopped, or on an invitation, express or implied, for the respondent to get off; but on a finding that the

carmen, by high care and watchfulness in the management of the car, could have prevented the respondent from falling into the ditch. The instruction lost sight of the acts of negligence specified in the petition and authorized a recovery on a finding by the jury of a vague lack of care in managing and controlling the car. Only in a general and indefinite sense can it be said the management of the car had anything to do with the accident. The car was not moved while respondent was alighting. It was in impliedly inviting respondent to get off at a bad place and neither warning her of danger nor otherwise looking after her safety, that the Transit Company's employees were remiss, if they were at all. The instruction should have distinctly predicated as grounds of recovery against the Transit Company, the three acts of negligence of which it was accused.

The respondent while suffering from her injury was nursed by her daughter, at that time a member of the household. Respondent promised to pay her for this attention but no price was fixed. Instead of proving the reasonable value of the services of the daughter, who was not shown to be an expert nurse, respondent was allowed to prove, over the objection of the appellants, that the price of the services, in St. Louis, of a trained nurse was six dollars for twenty-four hours. This testimony had no value whatever as proof of the worth of the daughter's services and tended unjustly to increase the damages awarded by the jury. It would have been as relevant to prove the value of the services of a physician. The inquiry was not as to the current price for professional nurses, but the reasonable value of nursing by a person of ordinary and untrained skill. The respondent was laid up for a long time and this testimony may have been very prejudicial. The exception to it was properly preserved in the motion for new trial and the amount of the verdict was charged to be excessive.

· The judgment is reversed and the cause remanded. All concur. ·