the executors have been in no possible manner prejudiced by what they now term "unreasonable delay." See In re Mullon's Estate, 145 N. Y. 98, 39 N. E. 821; Erwin v. Loper, 43 N. Y. 521; Baggott v. Boulger, 2 Duer, 160.

The plaintiff is entitled to judgment for the amount claimed, and, as the defendant refused to refer, to the costs as well. Code, § 1836; Fort v. Gooding, 9 Barb. 388.

━━━━━

(49 App. Div. 197.)

### TRACEY v. METROPOLITAN ST. RY. CO.

(Supreme Court, Appellate Division, First Department. March 9, 1900.)

**1. WITNESS—PRIVILEGE—WAIVER.**

Plaintiff, by testifying to his injuries, and calling as a witness Dr. K., who had attended him and examined his injuries, does not waive the right to insist on exclusion of the evidence of Dr. S., who, though he had been called in by plaintiff prior to his having Dr. K., had, so far as the evidence showed, never examined his injuries, but only given him some medicine.

**2. SAME.**

Defendant having placed a doctor on the stand, and asked him what condition he found plaintiff in, referring evidently to the time when he visited him just after the accident, a ruling of the court that, before permitting the examination to proceed, it would afford plaintiff an opportunity to ascertain by whom he was called, so that the question of privilege could properly be passed on, was proper.

**3. SAME—OBJECTION TO QUESTION.**

Objection that that was "not a proper question for an expert to answer," made to a hypothetical question concluding, "What, if anything, would you attribute his condition to at the time when you examined him?" does not present the point urged on appeal, that the question "did not call for an opinion with reasonable certainty, but merely for an opinion as to what could be the cause of plaintiff's injury."

**4. EXPERT TESTIMONY.**

A doctor may, as an expert, say whether or not plaintiff's condition was attributable to the fall received.

**5. PLEADING AND PROOF—INJURIES.**

Injury to knee may be shown under a complaint alleging that plaintiff was thrown, whereby he sustained serious injuries to his hip and thigh, "and was otherwise made sick, sore, and lame."

Van Brunt, P. J., dissenting.

Appeal from trial term, New York county.

·Action by John Tracey against the Metropolitan Street-Railway Company. From a judgment on a verdict for plaintiff and from an order denying motion for new trial, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Charles F. Brown, for appellant.

L. J. Morrison, for respondent.

O'BRIEN, J. The action was brought to recover $5,000 damages for personal injuries sustained by the plaintiff through the alleged negligence of the defendant in operating one of its south-bound Broadway cable cars on the afternoon of April 20, 1897, at the Twenty-Third street crossing. The complaint states that the plain-

tiff was driving a team of horses and a truck along Twenty-Third street, in a westerly direction, when the car struck the truck, throwing the plaintiff from his seat to the ground, "whereby he sustained serious injuries to his hip and thigh, and was otherwise made sick, sore, and lame"; and that by reason of said injuries he "has been and is unable to pursue his vocation as a truck driver, and has been put to expenses for medical treatment. Upon the trial the plaintiff testified that at the time of the accident he was on his way to deliver three tons of coal at Fifth avenue and Twenty-Second street, and that Connors, a shoveler, was with him on the truck; that when he approached the Broadway up-town track, and started to cross it, he saw the car four or five lengths away, and the gripman was talking with some one on the platform, and looking to one side, and Connors stood up on the seat, and waived his hat; that Connors said the car would hit them, but he replied he guessed the gripman would brake down; that when he saw the car coming in close, about a length and a half away, he tried to get off the track as fast as possible, and whipped up the horses, which were then on the downtown track, concluding he could get across; that the front of the car struck the hind wheel of the truck in the axle, shoving the end around, and knocking him off, and he was picked up and taken home; that he then thought he was only bruised in the hip, and sent for Dr. Sinsabaugh, who gave him medicine, but did not examine his knee at all, though he called his attention to it; that he had no other accident whatever, but within a few days his knee gave out, and a few weeks after the accident Dr. Bogart examined him; that he finally went to the hospital, where he remained for eight or ten months, and Dr. Kellogg attended him; that since then he has done no work. Connors corroborated the plaintiff's testimony, and stated that the car was half a block away, coming at full speed, and the horses' feet were on the first track, when he told the plaintiff to hurry up, and shouted, and held up his hat. Upon the part of the defendant, the gripman testified that he had not been talking to any one, and there was no one with him on the platform at the time of the accident; that when he first saw the plaintiff's truck he did not think there would be an accident, and began to ring the gong when the plaintiff's horses were right at the tracks; that while he was stopping the car the plaintiff pulled up the horses, and he then started the car ahead again, but the plaintiff whipped up the horses when the car was about 20 feet away, and he then put on the brake; that the car struck the truck near the front wheel, and went about a foot and a half in advance; that he could stop a car going at half rate, as his was within 15 to 20 feet. Several witnesses testified for the defendant that, when the gripman sounded the gong in warning, the horses of the plaintiff's truck were 10 or 15 feet away from the track; that the car had passed the lamp-post of the Twenty-Third street crossing, and that no one was on the platform with the gripman. One witness, who was a passenger on the car, said that when he heard the gong he looked out, saw an accident was going to happen, opened the door, and went out on the front platform to jump off. Another passenger stated that he also left his seat on hearing the gong ring, opened the door, and went out; that the car had

slackened speed, and he saw the plaintiff then whip up his horses, and the car then struck the front wheel of the truck. The defendant's switchman testified that the Twenty-Third street lamp-post was over a car length—that is, over 32 feet—from the Twenty-Third street car tracks. The section foreman said, "The car was ten or fifteen feet away from the truck at the time I noticed the ringing of his bell." The jury returned a verdict in favor of the plaintiff for $1,500, and from the judgment entered in accordance therewith the defendant appeals, and contends: First, that the verdict was against the weight of evidence; second, that error was committed in the rejection of the testimony of Dr. Sinsabaugh,—after the plaintiff had testified himself as to his injuries, and called Dr. Kellogg, he could no longer insist on the exclusion of the evidence of Dr. Sinsabaugh upon the ground of privilege; third, that errors were committed in the admission of medical testimony of Dr. Fralick.

Considering these in the order stated, we think the first point is not sustained by a review of the evidence; for, although the defendant's witnesses outnumber those of the plaintiff, the testimony of the former is by no means conclusive. Thus, the gripman's version of the accident would tend to show that he was negligent in starting up his car again while the plaintiff's heavy truck was directly ahead of him, and also because he did not stop the car "within fifteen or twenty feet," which he had already checked, when "twenty feet" separated the car from the truck. And it will be noticed that one witness says he did not hear the gong till the car was close at hand, while others testify that they had time to look out, conclude that an accident was going to happen, open the door, and step out on the platform. And, in this latter connection, it seems strange that it was necessary for both these passengers to open the door. One of the witnesses testified that, when he heard the gong ring, the car was passing the lamp-post, and another said the lamp-post was over 32 feet from the Twenty-Third street tracks, which would give ample time to stop the car. On the other hand, the testimony of the plaintiff and Connors is consistent, and tends to show that they had reason to think there was opportunity to cross the tracks, and that when they observed danger they did their best to avert it.

As to the exceptions taken to the rulings upon evidence involved in the second and third points, we might very well dispose of both with the observation that the objections were bad in form. Thus, in the testimony of Dr. Sinsabaugh, whom the plaintiff stated he had sent for, and who had given him medicine, but had not examined his knee, and who, it appears, was not called as a witness for the plaintiff, but whose testimony the defendant thought might be favorable, he, when placed upon the stand by the defendant, was asked the question, "Doctor, what condition did you find the patient in?" referring evidently to the time when he visited him just after the accident. Plaintiff's counsel thereupon said: "I object to that question until we shall have ascertained by whom the doctor was called." This objection was sustained, and the defendant's counsel then said he had no further question to ask, and took the exception now urged upon us.

As this witness was the physician called in by plaintiff, in order to raise the question as to whether he was disqualified from giving evidence against the plaintiff, and to determine the attitude he occupied, it was proper that this should first be ascertained before the plaintiff's objection to proceeding with the doctor's testimony could be formulated. The plaintiff's counsel had the right to demand that the doctor's relation be defined, as without it the court could not intelligently rule, if objection was made to his testifying. The court having acceded to this reasonable request, the defendant's counsel did nothing further, but took the exception which is now urged as ground for reversal, insisting that the ruling was in conflict with that made in Morris v. Railroad Co., 148 N. Y. 88, 42 N. E. 410. In that case two physicians had together made an examination, and, one being called to testify, the other was also allowed to give his evidence. Here, however, the two physicians did not attend at the same time, nor did they examine the patient together; and, from what appears at the time the question was raised, the only evidence relating to this physician was that he had given some medicine to the plaintiff, but had never examined his injuries. In another case cited, and inapplicable (McKinney v. Railroad Co., 104 N. Y. 352, 10 N. E. 544), the physician had testified upon a former trial, and when the question was raised at a subsequent trial, as to his competency to testify, it was held that, the plaintiff having called him and allowed him to give his evidence upon the prior trial, the privilege was thereby waived. Apart from this, however, we do not think that the point sought to be presented is in the case; for all that the court ruled was that, before permitting the examination of the physician to proceed, it would afford the plaintiff an opportunity to ascertain by whom he was called, so that the question of privilege could properly be passed upon. We think, therefore, that the ruling made was not erroneous.

The other exception was to a hypothetical question put to Dr. Fralick as to the plaintiff's injury, which concluded with asking him, "What, if anything, would you attribute his condition to at that time when you examined him?" The objection was, "That was not a proper question for an expert to answer." This form of objection does not present the point urged on this appeal, that the question "did not call for an opinion with reasonable certainty, but merely for an opinion as to what could be the cause of the plaintiff's injury." In other words, there was no objection that the question was speculative, indefinite, or incompetent, but merely that it was not a proper subject for expert testimony. Had the point now sought to be raised been properly presented by an objection good in form, and which indicated what was complained of, the question might have been so modified as to obviate the objection; but as the subject to which the inquiry was directed was one properly within the domain of expert testimony, and as the objection was that it was not within such domain, the court properly overruled it.

And it may be further said that the question was harmless, for the reason that the answer was one which an expert could give as to a cause, viz. a fall that with reasonable certainty could have produced plaintiff's injuries. The question called for the doctor's opinion as

an expert as to whether the plaintiff's condition was produced by a fall such as he testified he received, and the answer was that it could be produced by a fall, whether the plaintiff struck on his head, his back, or the other leg. It was competent for the doctor to say whether or not the plaintiff's condition was attributable to the fall received, and the case of Strohm v. Railroad Co., 96 N. Y. 305, cited by the appellant, is not in point. There the question held inadmissible was whether the injury received "might develop into worse signs or conditions," the court saying:

"Consequences which are contingent, speculative, or merely possible are not proper to be considered in ascertaining the damages. It is not enough that the injuries received may develop into more serious conditions than those which are visible at the time of the injury, nor even that they are likely to so develop. To entitle a plaintiff to recover present damages for apprehended future consequences, there must be such a decree of probability of their occurring as amounts to a reasonable certainty that they will result from the original injury."

Here the issue was not as to contingent, future consequences, but as to the cause of a present existing condition, and the question called for, and the answer given, showed "a reasonable certainty." Moreover, there is no evidence, or even suggestion, that the injuries resulted from any other cause or accident.

Other exceptions to the admission of medical testimony were embraced in the contention that the injury to the knee was not covered by the pleadings, and as to those it is sufficient to say that the complaint, though mentioning injuries to the hip and thigh, states that the plaintiff "was otherwise made sick, sore, and lame," and any evidence showing such latter condition was admissible.

We think, therefore, that the judgment and order appealed from should be affirmed, with costs. All concur, except VAN BRUNT, P. J., who dissents.