## JOHN O'LEARY v. SCULLIN STEEL COMPANY, Appellant.

### In Banc, March 22, 1924.

1. **BILL OF EXCEPTIONS: Alteration By Trial Court: Bystanders' Bill Approved.** The alteration by the trial judge of the bill of exceptions tendered by appellant, by changing certain questions asked experts and their answers, so as to make it appear that they testified that the injury to respondent's finger "could have caused" the infection of the bone of his arm, instead of the questions and answers shown by the notes and transcript of the official stenographer, namely, that they testified that the injury "did cause" the infection, is examined, and it is *held* that the bill as tendered, which was in fact a bystanders' bill, correctly stated the questions actually asked and the answers given.

2. **EVIDENCE: Cause of Infection: Testimony of Medical Experts: Invasion of Province of Jury.** The lowering of a section of a mold or flask by one of appellant's crane operators caused an injury to plaintiff described as "pinching out" a part of the flesh of the first joint of his thumb; this received treatment and appeared to heal; soon afterwards a boil appeared above his wrist and some time later an infection set in, which subsequently involved the upper part of the ulna and necessitated the removal of the upper two-thirds of it. Plaintiff contended the injury to the thumb caused the bone infection and this caused the appearance of the boil; appellant insists that the boil was not caused by the injury, but was the cause of the bone infection. *Held*, that it was not error to permit medical experts to testify that the injury to the thumb caused the infection and disease of the bone. In such case the infection and its causes relate to questions of technical science or

knowledge of which experts only can speak intelligently, and it is not error to permit them to testify, not only that the injury to the thumb might or could have caused the bone infection, but that it did or did not cause it; and their testimony, in such a case, does not invade the province of the jury, although the cause of the infection is the very fact to be proved. [Following Wood v. Railroad, 181 Mo. l. c. 450, and disapproving the contrary rule announced in Taylor v. Railroad, 185 Mo. l. c. 255; State v. Hyde, 234 Mo. l. c. 252; Glasgow v. Railroad, 191 Mo. l. c. 363; Roscoe v. Railway Co., 202 Mo. l. c. 594; DeMaet v. Storage Co., 231 Mo. l. c. 620, and other cases.]

3. ————: **Negligence: Hearsay: Knowledge Obtained from Others.** It was not error to permit defendant's foreman to testify that the foreman of the molders had told him that another workman had "said he could not do the work with the crane" which injured plaintiff's thumb, where it is conceded that the witness's previous testimony that the foreman of the molders had complained to him of the said workman's "method of operating the crane" was competent to show knowledge of the workman's incompetency. What was said by the foreman of the molders, as to the particulars of the complaint, was not incompetent as mere hearsay, if the complaint of said foreman was competent to prove knowledge.

4. **INSTRUCTION: Hypothesis: Assumption.** An instruction beginning with the hypothesis "if you find and believe from the evidence" and connects this clause up with subsequent clauses of the paragraph cannot be said to assume that the subsequent clauses assume as true the hypotheses in them stated.

5. ————: **Incompetence of Workman: No Requirement to Find Negligence.** A paragraph of an instruction purporting to be complete, in meaning, which ignores all questions save the incompetence of the operator of the crane which injured plaintiff's thumb and defendant's knowledge of his incompetence, requiring neither a finding that the operator was negligent nor that his negligence was the cause of the injury, but authorizing a verdict for plaintiff, is error.

6. ————: **Measure of Damages.** Where plaintiff's thumb was injured by "pinching out" a part of its flesh, and this injury received treatment and appeared to heal, and thereafter an infection set in in the upper part of the ulna, which made necessary a removal of two-thirds of the bone, and the principal issue in the case was whether this infection was caused by the injury to the thumb or was caused by a boil on the wrist, an instruction telling the jury that if they find for plaintiff under other instructions they will assess his damages at such sum as will reasonably compensate

him for the loss of wages "since said injuries" and for future loss of wages which are "the direct result of such injuries" is erroneous, since it authorizes a finding of damages for the diseased condition of the bone and its consequences if a verdict is returned for plaintiff on any theory, even though they might find that the infection of the bone did not result from the injury to the thumb.

Headnote 1:  Appeal and Error, 4 C. J. sec. 1876.  Headnotes 2 and 3:  Evidence:  2, 22 C. J. sec. 758;  3, 22 C. J. sec. 303.  Headnotes 4 and 5:  Trial:  4, 38 Cyc. 1666;  5, 38 Cyc. 1632.  Headnote 6:  Damages, 17 C. J. sec. 363.

Appeal from St. Louis City Circuit Court.—*Hon. Benjamin J. Klene,* Judge.

REVERSED AND REMANDED.

*Kelley, Starke & Moser* for appellant.

(1)  The bill of exceptions which was prepared by the official stenographer and presented to the court for allowance was improperly rejected, and the bystanders' bill of exceptions deposited by the defendant in the clerk's office in consequence of the court's refusal to sign and allow said bill of exceptions and permit the same to be filed, is complete and true and a proper bill of exceptions.  The truth of said bill of exceptions is to be determined by this court from the affidavits filed in support of and against said bill of exceptions.  Secs. 1460 to 1468, R. S. 1919; Buck v. Union Trust Co., 267 Mo. 644.  (2) The court erred in permitting witness Schuster, over the objection and exception of defendant, to testify that Walsh told said Schuster that U. Johnson (the crane man) could not do the work with the crane, for the reason that said testimony was hearsay; and since Johnson's competency was an issue in the case the improper admission thereof was prejudicial to the rights of this defendant.  (3)  The court erred in permitting plaintiff's expert witnesses to testify that in their opinions the condition that plaintiff suffered from was caused by the alleged injury to his thumb and not by the boil or carbuncle which defendant contended plaintiff was suffering from.  Said questions called for answers invading the province of the jury, and the answers made by said

witnesses in response to said questions determined a vital issue in this case which it was the sole province of the jury to decide. Smart v. Kansas City, 208 Mo. 162, 201; Glasgow v. Metrop. Str. Ry. Co., 191 Mo. 347, 358; Castanie v. United Railways Co., 249 Mo. 192; Taylor v. Grand Avenue Railway Co., 185 Mo. 239, 255. (4) The court erred in giving plaintiff's instruction number 1, for the reason that said instruction erroneously assumes as true certain facts that were in issue and fails to require the jury to find that plaintiff's alleged injuries were caused by defendant's alleged negligence. Miller v. Bussey, 186 S. W. 985; Ganey v. Kansas City, 259 Mo. 654, 663.; Dowling v. Allen & Co., 88 Mo. 293, 296; Neeley v. Snyder, 193 S. W. 610; Abbott v. Mining Co., 112 Mo. App. 556; Priebe v. Crandall, 187 S. W. 607; Baker v. Independence, 106 Mo. App. 511; Burrows v. Likes, 180 Mo. App. 447; Gessner v. Railway Co., 132 Mo. App. 584; Clark v. Terminal Railway Co., 242 Mo. 570; State ex rel. v. Morrison, 244 Mo. 212; Crow v. Railroad, 212 Mo. 610. (5) The court erred in giving plaintiff's instruction number 2, for the reason that said instruction erroneously assumes that the crane operator therein mentioned was not reasonably skillful or competent. Authorities, supra.

*Oliver A. Fabick* and *Kurt Von Reppert* for respondent.

(1) The truth of the bystanders bill of exceptions is to be determined by this court from the affidavits filed in support of and against the said bill of exceptions. And where there is an irreconcilable conflict between the opposing affidavits, the certificate of the trial judge will prevail. Buck v. Union Trust Co., 267 Mo. 644; 4 C. J. 244, 257, 258; State v. Howell, 117 Mo. 310; State ex rel. v. Taylor, 134 Mo. App. 440; State ex rel. v. Thayer, 15 Mo. App. 391; State ex rel. v. Wickham, 5 Mo. App. 301. (2) The admission of the evidence of the witness Schuster as to what was said to him by the witness Walsh was competent on the theory that it tended to show

knowledge on the part of the appellant. The witness Schuster was a vice-principal of the appellant. The question merely called upon the witness to particularize the complaints made by another vice-principal (Walsh) in order to show the occasions, character and extent of knowledge on the part of the appellant concerning the crane operator's unskillfulness, and therefore was competent. (3) The court did not err in permitting the physicians attending the respondent to testify what in their opinion caused the infection they had described in the forearm requiring the removal of the ulna bone, and further that in their opinion the infection started at the injury at the base of the thumb. Under the facts in this case and the answer of appellant, these questions were competent and proper. Mummaw v. Tel. & Tel. Co., 208 S. W. 478; Bragg v. Metrop. St. Ry. Co., 192 Mo. 341; McCaffery v. Railway Co., 192 Mo. 160; Veiss v. United Ry. Co., 184 Mo. App. 39; Jerome v. United Ry. Co., 155 Mo. App. 206; Wood v. Railroad, 181 Mo. 441; Holden v. Railroad, 108 Mo. App. 669; Witty v. Traction Co., 153 Mo. App. 432; Torreyson v. United Ry. Co., 246 Mo. 703; Torreyson v. United Ry. Co., 164 Mo. App. 371; Torreyson v. United Ry. Co., 144 Mo. App. 635; Monroe v. United Ry. Co., 154 Mo. App. 69; Rogers on Expert Testimony (2 Ed.) pp. 121, 122. (4) Instruction number one requires the jury to find every essential fact entitling plaintiff to recover. There was no serious contention that the fleshy part of respondent's right hand was pinched out. The appellant's own dispensary records established said fact. It was not contested that the crane operator, Johnson, did not possess reasonable skill or competency with reference to operating the crane at the time of respondent's injury, nor that the appellant knew that fact. Brown v. Lumber Co., 209 S. W. 310; O'Hare v. Railway Co., 95 Mo. 662; Williams v. Railway Co., 109 Mo. 475. It is the objection to instruction number one that it did not require the jury to find that the appellant was guilty of any negligence. This was not an error, because all that was

necessary in the instruction was to submit to the jury, as facts to be found by them, such facts which, under the law, constituted negligence, without requiring that they find they were negligently done. McCaffery v. Railway Co., 192 Mo. 155; Luckel v. Century Building Co., 177 Mo. 626. (5) Instruction number four, given on behalf of respondent on the measure of damages, was proper and has been repeatedly approved. Powell v. Railroad, 255 Mo. 452; Gayle v. Mo. Car & Foundry Co., 177 Mo. 453; Torreyson v. United Ry. Co., 164 Mo. App. 376; Torreyson v. United Ry. Co., 246 Mo. 707.

JAMES T. BLAIR, J.—This is an appeal from a judgment for $12,500 in an action which respondent brought for damages for injuries he alleges he suffered by reason of the negligent lowering of a section of a mold or flask by one of appellant's crane operators.

The questions raised do not require a detailed statement of all the facts. The immediate injury suffered by respondent was the "pinching out" of a part of the flesh of the first joint of his right thumb. This received treatment and appeared to heal. Soon after this injury a boil appeared above respondent's right wrist. Sometime thereafter it was discovered that just below the elbow an infection had set in which subsequently involved the upper part of the ulna and necessitated a removal of the upper two-thirds of it. The principal issue seems to have been whether the boil or the injury to the thumb was the cause of the infection of the ulna. Other facts appear in connection with the discussion of questions to which they pertain.

I. Appellant secured from the court stenographer a transcript of the evidence and made up its bill of exceptions and delivered it to respondent's counsel for examination. Several days thereafter respon-

**Bill of Exceptions.** dent's counsel served notice that they would file objections to this bill. Thereafter, counsel met with the judge, and respondent's objections were

considered. After the discussion the trial judge retained the proffered bill for further consideration. A few days later he made several changes in the report of the testimony of Dr. Ross and that of Dr. Newman, and, without further notice, filed the bill as that of appellant. Subsequently appellant moved to set aside the order filing the bill. The motion was overruled. Thereafter, a second motion to set aside was filed and sustained. The proposed bill was then presented to Judge Killoren who had succeeded Judge Klene. He refused to sign it and based his refusal upon that of Judge Klene. Later, a bystanders' bill was presented to Judge Killoren. On the ground that the trial judge had rejected it, Judge Killoren refused to sign and endorsed upon it the statutory certificate. This bill was then deposited with the clerk. Affidavits in support of the bill and in opposition to it were filed by the respective parties.

The corrections of the transcript contended for by respondent and allowed by the judge affected questions asked of experts. The bill as prepared by appellant showed that these questions called for the opinions of the experts as to whether the injury to respondent's thumb "caused" the infection and decay of the bone of his arm. The changes transformed these questions and answers so that the opinions appeared to have been given as to whether the infection *could* have been caused by the injury mentioned. This is characteristic of all the changes involved.

Two jurors signed the bystanders' bill. The other signer was the official reporter of the trial court. Affidavits of the stenographer, an expert witness and of one of appellant's counsel were filed. Affidavits of both of respondent's counsel were filed. Judge Klene's affidavit was filed by respondent. The changes made were considerable in extent and radical in character. The stenographer's notes are shown to be of a sort that can be read by any one skilled in the shorthand system he uses. They were tendered in support of the transcript he made. The evidence makes it clear that notes which would rep-

resent the words in the transcript as made by the stenographer could not be interpreted to represent the questions and answers as they stood after the changes were made by the judge, either exactly or in substance. There is no contention that the transcript the stenographer made is not an accurate interpretation or translation of the notes he made on the trial. The differences between the notes as taken and those necessary to represent even the substance of the questions and answers as changed by the judge are too radical and numerous to be accounted for on the theory that the stenographer merely erred in his taking notes of them. In fact, there seems to be no doubt that the stenographer must have deliberately written the questions and answers falsely, in shorthand at the time, if the corrections made by the judge are to be sustained. There are several other questions and answers of the same sort, open to the same objection, or supposed objection, which were not corrected or changed, and of which no complaint is now made by respondent and to which no correction was suggested by the trial judge. This weakens somewhat the force of the suggestion that the trial judge had the rule, now relied on by appellant, in mind at all times and would have sustained the objections based upon it if the questions and answers had been in the form shown by the stenographer's transcript. This suggestion is further weakened when it appears that respondent's counsel are confidently of opinion that the rule for which appellant contends is wholly inapplicable even if the questions and answers were as certified by the stenographer. Objections were made, and are shown by the transcript, which are quite inapplicable if the questions were asked in the form to which the court changed them. The answers of Dr. Ross as shown by the transcript, and they are unchanged and unquestioned, are responsive to the questions as the stenographer shows them and are not responsive to the changed questions. As the stenographer's transcript shows these answers, the witness gave his opinion that the injury to the thumb "caused" the infection of the fore-

arm and that the boil on the wrist was "a secondary infection, *being from* the injury to the thumb." No motion to strike this out as not responsive was made. The point had been and continued to be a hard fought one. In answer to another one of the questions in controversy, Dr. Newman gave his opinion that the bone infection "resulted" from the injury to the thumb. The question, as shown by the bystanders' bill, which follows the transcript, hypothesized certain facts and concluded: "I will ask you, in your opinion, what *caused* the infection to the upper arm, requiring the removal of the ulna bone?" The court changed this to the following: "I will ask you, in your opinion," (if?) "the condition you found in the forearm requiring the removal of the ulna bone *could have been caused* by an infection setting in where the fleshy part was pinched from the thumb?" The witness answered: "I felt that the case was a pure case of ascending infection, in which the infection from the lower part of the member had traveled up the arm." "Q. And coming from where, Doctor?" Objection made and overruled. Respondent's counsel: "The question is at what point the infection set in." Objection renewed and overruled. Mr. Fabick: "Q. To the best of your opinion, Doctor? A. My opinion is that the infection started at the injury at the base of the thumb, and that from there it traveled up and formed a slight infection above the wrist, and followed into the depths of the wrist, and getting into the bone it resulted in this condition." It is apparent these witnesses, at the time, understood the questions as the stenographer understood and wrote them and not as they appear in the forms to which they were changed.

It is suggested the court had ruled with appellant on the point on other like questions and that this indicates the questions in controversy could not have been in conflict with the rule contended for or the court would have ruled as theretofore. The bill approved by the court showed conflicting rulings on the point, and the argument works one way as well as the other. In addi-

tion, one of the rulings alluded to was made because of the "form of the question." The other was the direct inquiry: "Doctor, in your opinion, from your observation, what caused the infection, and the condition of the arm?" This was objected to as an "invasion of the province of the jury," and the objection was sustained. Respondent's counsel then propounded a question which hypothesized the facts, of which there was evidence, relating to the injury and treatment, and closed with the inquiry as to the cause. As first asked, the question may be said to be objectionable in that it may be construed to call for an opinion whether respondent was injured in the manner he claimed. The face of the question and ruling do not require the inference that the point in the court's mind or in the minds of counsel was the one now made on the other questions and answers. There are other things which point to the correctness of the stenographer's notes and transcript, but those set out indicate the convincing weight of the evidence on the matter in controversy is with appellant. The bill should have been approved as tendered. The bystanders' bill is allowed. [Buck v. Buck, 267 Mo. 644.] As was said in that case, this conclusion does not depend upon any inference of bad faith on the part of anyone involved in the unfortunate controversy.

II. One important question was whether the diseased condition of the bone resulted from the injury to the thumb or from the boil or carbuncle on the wrist. Respondent contended the thumb injury caused the bone infection and this caused the appearance

Conclusion of Witness: Cause of Injury.

of the boil. Appellant insisted the boil was not caused by the injury, but itself caused the bone infection. There was expert evidence offered for the purpose of supporting each of these theories. As the bystanders' bill shows, the court permitted expert witnesses for respondent to testify, over proper objections and exceptions and in answer to questions hypothesizing the facts, that the in-

jury to the thumb *caused* the infection and disease of the bone. Under the rule now favored by the decisions in this State this was error. [Taylor v. Railroad, 185 Mo. l. c. 255, et seq.; State v. Hyde, 234 Mo. l. c. 252; Glasgow v. Railroad, 191 Mo. l. c. 363; Roscoe v. Railway Co., 202 Mo. l. c. 594 et seq.; DeMaet v. Storage Co., 231 Mo. l. c. 620.] Respondent cites several decisions which he argues show this rule is inapplicable to this case. In Mummaw v. Telephone Co., 208 S. W. l. c. 478, it was held that it was not reversible error to permit an expert to testify that the injury Mummaw "received 'would' cause the change in the condition of the spine of which plaintiff complained." The Court of Appeals said: "To permit a physician to testify in such a manner has been criticized, but in cases like this, where the whole case proceeded on both sides on the theory that the accident happened and the plaintiff was injured, and where the controlling defense was the nonliability of the defendant for the accident and injury, as appears in this case, the admission of such testimony is held not to be reversible error." In support of this ruling the court cited Bragg v. Met. St. Ry., 192 Mo. l. c. 344; Taylor v. Met. St. Ry., 256 Mo. 210; Veiss v. United Rys., 184 Mo. App. l. c. 40. In the Bragg Case the objections made were held insufficient to present the question and, further, what is said *obiter*, seems to bring the instant case within the rule. The Taylor Case was peculiar in its facts and broke, as did the Mummaw Case, upon the question whether certain conditions "might, could or *would*" have resulted from the injury complained of or from a blow subsequently received. The decision does not support respondent's contention. In the Veiss Case plaintiff was dragged by a wire attached to a street car. This was not questioned. The distance she was dragged and the injuries resulting therefrom were in question. In Castanie v. Railroad, 249 Mo. l. c. 195, the record in this court shows the substance of the question was: If Miss Castanie was thrown from a street car and fell in a described manner, and if she

struck upon her hip and "rebounded and struck again," and *if* there had been "no other accident or injury produced by force" "to those parts," whether the expert would ascribe the condition of the hip joint, to which he had just testified, to the injury from the fall hypothesized. The defense was that no such accident as that of which plaintiff complained had happened at all. The effect of the holding of the court is that that answer "invaded the province of the jury" because it amounted to testimony that the "supposed fall *did* cause the injury, because that was a 'fact to be proved' and which it was the duty of the jury to determine in view of all the evidence on that issue. The opinion of the physician undertook to relieve them of that task. . . . The answer . . . left nothing for the jury to find if they believed the statement of the witness as to the cause of the injuries sustained by plaintiff." It is apparent that the physician was not, in that case, asked to testify whether there was an accident or whether Miss Castanie fell. There was evidence tending to prove she fell as she claimed, and the question, so far as the opinion goes, properly hypothesized the fact. The question was simply whether, *if she fell as she claimed,* and if there had been no other injury "produced by force to those parts," the physician, as an expert, was of opinion the fall brought about the conditions he had discovered. It is clear that decision does not run counter to appellant's theory in the instant case, but supports it. In this, the instant case, the question is whether one of two different causes produced the bone infection. The testimony of respondent's experts is that when the facts are all considered they think the thumb injury caused the bone infection. This is condemned by the rule. [State v. Hyde, supra.] The rule of the cited cases is broad and includes the instant case. If it is to be adhered to and applied here, it requires a reversal of the judgment and remandment of the cause.

III.   Speaking for myself, I do not think the rule considered in the preceding paragraph is sound.   The usual formula used by counsel and court in invoking and applying the rule is that to permit an expert witness to say that a condition of which there is evidence was *caused* by happenings of which there is evidence and which are hypothesized in the question put to him, is to "invade the province of the jury."   No doubt a question put to an expert could be so framed as to call for an answer as to whether the accident alleged actually happened.   Such a question should not be permitted.   It would not invade the jury's province, but it would be an opinion outside the expert's field of science, and such opinions are not competent.   The jury's duty to decide that question could not be "usurped" by a witness nor its "province invaded."   The witness would remain a witness and the jury would remain the jury.   Nevertheless, the opinion would not be competent as an expert opinion for the reason that the expert would not be an expert on that question and his opinion would be no more competent than that of any other person.   If one person might give an opinion on such a subject—in substance, whether evidence was true or untrue—all would be competent, and the proper method would be to submit the question to a sort of primary election and give the jury the result.   With respect to the question in this case there is no reason to exclude the expert's opinion as to the cause of the bone infection.   No layman could tell from the evidence (other than that of the experts) whether the thumb injury or the boil caused that infection.   The only evidence which, to the lay mind in the jury box, could be said to have any efficacy to point to one rather than the other as the cause of the infection, is that of experts.   In this situation our law steps in and by the rule of the preceding paragraph directly forbids the expert to say more than that the wound or the boil, or both, *"might or could"* cause the infection of the bone.   The jury is then in this situation: It has before it no evidence

*Cause of Injury: Expert Testimony: Fact to Be Proved.*

on which it can form an independent opinion as to the
cause; it has expert testimony that the injury to the
thumb "might or could" cause the bone infection; it has
before it other expert testimony that the boil "might or
could" cause it; it has, in this case, other testimony that
many other things might or could cause it; it has no testi-
mony that either the wound or boil, or anything else, did
cause it. The burden is on plaintiff. The jury might well
reflect: "To our minds, untrained in the physician's field,
the evidence does not show the cause; the experts do not
tell the cause; that a thing 'might or could' be true is far
short of evidence that it is more probable than some other
explanation; it is plaintiff's duty to prove his case by a
preponderance of the evidence; all he has proved is that
the injury he says he received 'might or could' have
caused this trouble with his arm; he has not, therefore,
made out his proof on this point, and as to it we must find
against him." In this case the infected bone is practical-
ly the whole case as far as recoverable damages are con-
cerned. It is not surprising to find that the rule has been
criticized by courts and text-writers. If it is true that an
opinion like that given in this case is erroneously received
because it is an opinion "upon the question the jury is to
decide," then every opinion in every case is incompetent
for that reason or it is immaterial. Unless the opinion
of the expert aids the jury in its labors, it is of no value
and for that reason is not admissible; and if it does aid
them, it is solely because it in some way points to the
truth on the issue before them. If it points to the truth
but partially, that will not save it from the rule, unless
the court will hold that a "reasonable" "invasion of the
province of the jury" can be tolerated. The question has
been decided correctly in this State. In Wood v. Rail-
road, 181 Mo. l. c. 450 et seq., it is said:

"The objection, narrowed down, is to the action of
the court in permitting him, in view of the facts detailed
in the hypothetical case, to give his opinion as to what
caused the nervous prostration with which he found Mrs.
Wood to be suffering. He was competent after his ex-

amination of her to say that was her disease. Made acquainted then as he was by the facts stated in the hypothetical case, was he or was he not competent to express an opinion as to the cause of said disease? The question is by no means a new one.

"In Donnelly v. Railroad, 70 Minn. 278, the action was for damages for personal injuries. The main assignment of error related to the action of the trial court in permitting a hypothetical question propounded to a medical expert, calling for his opinion as to the cause of plaintiff's condition, based upon the evidence as to the manner in which she received her injury, the kind of injury inflicted, her subsequent condition, and her bodily condition. It will be observed that it furnishes a legal parallel to the question now before us. The court said the objection was that the opinion sought from the expert called for *the cause* of the plaintiff's condition, and was not the subject of expert testimony, being the very question the jury were to pass upon—the same here. The court responded to that contention as follows:

" 'It is laid down in the books that a question to an expert witness should not be framed so as to invade the province of the jury; but the line of cleavage between what does and what does not invade the province of the jury is not capable of definite location by any exact rule applicable to all cases, without regard to the subject of inquiry. The mere fact that the opinion called for covers the very issue which the jury will have to pass upon is not conclusive that it is not the proper subject of expert or opinion evidence. For example, sanity or insanity is the subject of expert testimony, although that may be the sole issue to be determined by the jury. Neither do we appreciate the fine distinction sometimes sought to be drawn between asking the expert whether, in his opinion, certain causes might produce certain results, and asking him whether, in his opinion, they did produce certain results.

" 'It is well settled that the opinion of medical experts as to the cause of death are admissible, such opinions being founded either upon the personal knowledge of

the facts of the case, or upon a statement of the nature of the injury or symptoms and nature of the disease as testified to by others. [Rogers, Expert Testimony, sec. 49, and cases cited.] There can be no difference in principle between an opinion as to the cause of physical ailments which have not resulted in death. This court has held that in answering a hypothetical question embodying a person's assumed symptoms and conditions, as testified to by others, a medical expert may give his opinion as to the probability of recovery. [Peterson v. Railroad, 38 Minn. 511, 39 N. W. 485.] Also that a physician who has heard the testimony as to the manner in which the plaintiff was injured, the kind of injuries inflicted and his present bodily condition, may give an opinion, based on that evidence, as to the cause of the plaintiff's condition. [Cooper v. Railroad, 54 Minn. 379. This case is directly in point.]' The learned court then goes on to comment on Briggs v. Railroad, 52 Minn. 36, and concludes by saying, 'The writer of the opinion in that case probably used language which is too broad as a general proposition of law unless qualified or limited.' Counsel for defendant in this case relies upon the Briggs Case as an authority for their contention, but it appears that the court which rendered it has since disapproved it.

"Very apposite to this discussion is the opinion of the Court of Appeals of New York in McClain v. Railroad, 116 N. Y. 468:

" 'There was no error in the reception of the evidence referred to in the present case. It was given as the judgment of the witness that the injury was the cause of the condition of the plaintiff, and that certain consequences would follow in relation to his physical health and condition, as the result of the injury, as indicated by such condition. And the same may be said of the exception taken to the reception of the answer of the doctor to the hypothetical question. Upon the state of facts assumed by the inquiry, it was competent for the witness to state that in his judgment the tremor and the impairment of the nervous system, with which the plaintiff was

afflicted, was due to the injury. The facts upon which the question was based practically excluded all causes up to the time of the accident, and, therefore, the evidence called for was not speculative. It was offered to show not merely that the injury might produce the condition or that such a result was likely to follow, but that in view of such facts it did cause such condition.'

"Without quoting at length from the following cases, they announce the same rule and hold that it is competent for an expert medical man to give his opinion in view of the statement of facts, that the injury was the cause of the disease or condition found in the injured person: Stouter v. Railroad, 127 N. Y. 661; Filer v. Railroad, 49 N. Y. 42; Flaherty v. Powers, 167 Mass. 61; Turner v. Newburg, 109 N. Y. 308; City of Decatur v. Fisher, 63 Ill. 41; Com. v. Mullins, 2 Allen (Mass.) 295; Tracey v. Railroad, 63 N. Y. Supp. 242; Stout v. Ins. Co., 130 Cal. 471; Railroad v. Seymour, 92 Md. 425; Railroad v. Laws, 61 S. W. 498.

"In Missouri the rule is well established that a medical expert may give his opinion as to the cause of a diseased condition or that it will be permanent or the cause of death, upon a hypothetical statement of the facts. And as to the proposition that his opinion may go to the very issue on trial, it was ruled in State v. Wright, 134 Mo. 404, that a medical expert may give his opinion as to the sanity or insanity of the defendant, having for a basis the hypothetical case, together with what he had learned from an examination of the defendant, though this is the sole issue to be decided by the jury. [State v. Welsor, 117 Mo. 580-1; State v. Minton, 116 Mo. 605.]

"Indeed, nothing is better settled in the criminal practice, than that a medical witness may describe the wounds which he observed upon a dead person and give his opinion whether one or more of them produced the death or were necessarily mortal.

"The cases are too numerous to cite. And it is the universal rule in this country that a medical expert may give his opinion as to the cause of death, notwithstanding

that is one of the issues, and sometimes the only issue in the case. [Smiley v. Railroad, 160 Mo. 629; State v. Chiles, 44 S. C. 338; Powell v. State, 13 Tex. App. 244; Mitchell v. State, 58 Ala. 417; Simon v. State, 108 Ala. 27; Newton v. State, 21 Fla. 102; State v. Tippet, 94 Iowa, 649; State v. Smith, 32 Maine, 369.]

"The industry of counsel has collated a large number of decisions in this State in which questions as to matters within the ordinary experience of life, questions which the average juryman in possession of the facts could determine equally as well as an expert, and they were excluded on this ground. Such, for instance, as Graney v. Railroad, 157 Mo. 628, whether it was possible for a boy to fall in a certain manner without striking the cars; or Langston v. Railroad, 147 Mo. 465, in which it was proposed to ask the opinion of a witness as to the competency of a servant; or Eubank v. Edina, 88 Mo. 650, in which the inquiry was whether a sidewalk was in a reasonably safe condition.

"An examination of the whole list will disclose that they differ wholly from a case like the one under consideration, wherein the disease and its causes relate to a question of technical science or knowledge of which an expert only can speak intelligently, and such peculiarly is a question as to the existence of a nervous disease like neurasthenia and its causes. The question propounded falls clearly within the exception noted in Benjamin v. Railroad, 133 Mo. 288, and there was no error in permitting it to be asked or answered by the expert medical witness."

Efforts to distinguish this case have been made. [Glasgow v. Railroad, 191 Mo. l. c. 365; State v. Hyde, 234 Mo. l. c. 253, and other cases.] In these decisions the question asked in Wood v. Railway, is said to have been within the rule in Taylor v. Railroad and other like cases. The question *as stated for decision* by GANTT, J., cannot be so construed. In Redmon v. Railroad, 185 Mo. l. c. 14, 15, Division Two, upon the authority of the Wood Case, expressly held that "an expert medical man, such

as Dr. Hannawalt was shown to be, was competent to give his opinion upon a hypothetical question that an injury *was the cause* of a disease, or condition found in an injured person.'' Some decisions allow testimony that certain occurrences were the ''probable cause'' to escape condemnation under the rule. If the rule is sound, these decisions are obviously unsound. No matter how categorically a medical expert speaks, yet his opinion as to a cause nearly or quite always must be based upon the probabilities and is an opinion still. Also, testimony that a stated happening ''would'' produce a certain condition necessarily involves an opinion that such result is more probable, and is bad if the rule is good—and applicable.

Opinions as to sanity, appearance, condition, value, speed and many other things are permitted to be given. Each is upon a question which it is the duty of the jury, the trier of the facts, to decide; and each ''invades the province of the jury'' if the question as to the cause of the diseased condition invades it in this case. The same is true of the opinions of lay witnesses which may be given when ''the witness has had the means of personal observation, and the facts and circumstances upon which he bases this conclusion are incapable of being detailed so intelligently as to enable anyone but the observer himself to form an intelligent conclusion from them.'' [Eyerman v. Sheehan et al., 52 Mo. l. c. 223.]

In the instant case the jury cannot, without expert testimony, get at the cause from the other evidence because the evidence has no tendency to prove to the lay mind a relation of cause and effect. It could not logically find the cause from the expert testimony if the rule in question is applied to restrict expert opinion to what might or could result from the injury, since that does not necessarily go further than a possibility, and a mere possibility does not satisfy the burden of proof. Under the rule, on the facts in this case, it would have to be held that the injury to the bone by reason of its diseased condition ought to have been taken from the jury as a basis

for the assessment of damages. It may be said the jury may decide which of the experts it will believe and then find accordingly. The difficulty is that after the jury has determined which expert it will believe and credits him, it comes to nothing, because what it has concluded to believe is merely that a certain thing "might or could" produce a stated result or condition. In this case the fact that a cause for which appellant is liable might or could have produced the diseased ulna does not show that a cause for which appellant was not liable did not cause it. In fact, it makes no difference which expert witness the jury chooses to believe in this case. So far as they can tell from the non-expert testimony either cause might or could produce the result. The experts are allowed to tell them this, and no more. So far as the testimony goes it does not advise the jury that some other cause might not or could not have caused the result. The injury to the thumb might or could have caused it. Some other cause might or could have caused it. On this record the jury might or could solve the problem solely by guessing. The quotation from the Wood Case discloses other reasons and decisions against the rule. Other decisions rendered since arrive at like conclusions. I am unable to agree to the rule discussed in the preceding paragraph. (1) The rule should be disavowed. (2) In any event, the rule should be held inapplicable to this case, on the facts, despite the decisions which announce it so broadly that this case falls within it—and they should be overruled at least to that extent. Even this would leave but little of the rule.

IV. Appellant's foreman, Schuster, was asked whether he remembered "any specific instances of what Mr. Walsh" (foreman of the molders) had told him "as to Johnson's running of the crane." This was objected to as calling for hearsay. The objection was overruled, and the witness answered: "Yes, sir; he said he couldn't do the work with the crane" Previously Schuster had testified that Walsh had complained to him two or three times "as to U. Johnson's

*Hearsay.*

method of operating the crane." We understand appellant to concede this last testimony was admissible to show knowledge of the crane operator's incompetency. The contention is that "what was said by Walsh," as to the particulars of his complaint, was incompetent as mere hearsay. The testimony was competent as against the objection made, if a complaint by Walsh was competent to prove knowledge, as is conceded. What the ruling might have been against a different objection is not a question which is presented.

V.  Instruction numbered 1 reads as follows:

"The court instructs the jury that if they believe and find from the evidence that on September 21, 1920, plaintiff was in the employ of defendant as a molder; that on said date plaintiff was engaged with another molder and helpers in making the mold described in the evidence; that a section of the mold weighing about 4000 pounds had to be placed on the other sections of the mold then in course of construction; that to place said section as aforesaid a traveling electric crane was used by defendant; that said crane was in charge of, and operated by a crane operator employed by defendant; that the section aforesaid was fastened and attached to said crane by means of chains, hooks and rings, and thereafter moved by said crane over and above the other sections, and held stationary about a foot above the same; that plaintiff and the other molder and their helpers in the discharge of their duties proceeded to place pins in the openings of the lower flange of the suspended section while it was held stationary; that it was the duty of the crane operator not to lower said section except and only upon a signal from the molders; that it was plaintiff's duty to steady and guide said section in the lowering thereof so as to place it in alignment with the other sections and to permit the pins to be fitted in the openings of the upper flange of the lower section; that in steadying and guiding said section plaintiff had to use his hands; that it was the duty of the crane opera-

*Instruction.*

tor when lowering said section to move same slowly and gradually, and only upon a signal being given by a molder; that while plaintiff was in the act of placing the pin in the opening of the lower flange of said suspended section with his left hand, he had his right hand against the lower flange of the suspended section steadying and guiding the same, and that without a signal being given at the time by the molders to lower the same, the said crane operator negligently and carelessly lowered the same with great force and rapidity, thereby catching plaintiff's fleshy part of his right hand between the said sections and pinching out a part of plaintiff's hand, directly causing plaintiff's injuries as mentioned and described in the evidence; that plaintiff at said time was exercising ordinary care for his own safety, that is to say, that degree of care which an ordinarily prudent person would exercise under the same, or similar circumstances.

"And the court further instructs you that it was the duty of the defendant to exercise ordinary care in employing a reasonably competent and skillful crane operator; and if you further find and believe from the evidence that the said crane operator did not possess reasonable skill or competency with reference to operating said crane, and that the defendant knew or by the exercise of ordinary care could have known, that said crane operator was not reasonably skillful or competent to operate said crane, then your verdict must be in favor of the plaintiff, even though you may find and believe from the evidence that plaintiff and the said crane operator at the time mentioned in the evidence were fellow-servants, as said term is described in other instructions."

(1) It is argued that in the first paragraph the clause "thereby catching plaintiff's fleshy part of his right hand between the said sections and pinching out a part of plaintiff's hand, directly causing plaintiff's injuries as mentioned and described in the evidence," assumes that plaintiff's hand was "caught and pinched, *directly causing plaintiff's injuries as described in the*

*evidence,* without requiring the jury to find such to have been the fact.'' This whole paragraph hangs upon the initial clause, ''the court instructs the jury that if they find and believe from the evidence.'' The instruction, in the respect pointed out, is not well drawn, but when the initial clause is read into the clause complained of there does not appear any assumption of fact that was likely to prove prejudicial in this case. It would have been clearer if the clause had read ''and thereby caught,'' . . . ''and thereby caused,'' etc.

(2) It is insisted that the clause in the second paragraph, ''and that the defendant knew, or by the exercise of ordinary care could have known, that said crane operator was not reasonably skillful or competent to operate said crane,'' assumes that the crane operator ''was not reasonably skillful or competent.'' The clause complained of has reference to appellant's knowledge—or negligent lack of it—and the clause which immediately precedes it requires a finding of the operator's incompetency or lack of reasonable skill before a verdict can be returned for respondent. The objection is not sound.

(3) The third objection to this instruction is more serious. The first paragraph consists of a series of introductory conditional clauses, but contains no consequent clause to express the result if the conditions be found true. It is rich in protases but contains no apodosis. It means nothing. The second paragraph is clearly open to the construction that it authorizes the jury to find for respondent if it found, merely, that the crane operator was incompetent and this incompetence was or should have been known to appellant. The words ''and if you further find'' do not incorporate the first paragraph in the second, but would more naturally be construed to refer to the preceding matter in the second paragraph. The paragraph purports to be and is complete, in meaning, and ignores all questions save that concerning the incompetence of the operator and appellant's knowledge of it and then authorizes a verdict. It requires neither a finding that the operator was neg-

303 Mo. Sup.—25.

ligent nor one that his negligence was the cause of the injury to respondent's thumb.

VI.   The instruction on the measure of damages is erroneous.   It told the jury, among other things, that if, under other instructions, a verdict for respondent was found, "you will assess his damages in such sum as you find and believe from the evidence will fairly compensate him for:

Measure of Damages.

"First:   The physical pain and mental anguish he has suffered and will in the future suffer as a direct result of said injuries, if any.

"Second:   And such sum as you find and believe from the evidence plaintiff has expended or incurred liability for medical and surgical services, not to exceed the sum of $500, and for such medical and surgical services as you may find from the evidence he will in the future necessarily incur as a direct result of such injuries, if any.

"Third:   And such sum, if any, as you find and believe from the evidence that plaintiff has expended or incurred liability for medicines, hospital bills and X-ray plates, as a direct result of such injuries, not to exceed, however, the sum of $139.

"Fourth:   And such sum as you find and believe from the evidence will reasonably compensate plaintiff for the loss of wages since said injuries, if any, not to exceed the sum of $3300, and for such sum as you find and believe from the evidence he will in the future lose as a direct result of such injuries, if any.

"Fifth:   And for such permanent injury, if any, as you may find was occasioned by said injuries."

The chief issue as to the diseased condition of respondent's arm was whether it was due to the injury to his thumb or to the boil.   The injury to the thumb, if liability for it was found, entitled respondent to a verdict in some amount.   It was not, in itself, important as a basis of damages.   If the jury should find the diseased bone was not due to it, then but a small recovery could

O'Leary v. Scullin Steel Company.

be justified. The loss of time and earnings due to the thumb injury was slight, unless the bone infection came from it—an issue of fact. Yet the instruction, among other things, allowed a recovery for "such sum as you find and believe from the evidence will reasonably compensate plaintiff for the loss of wages *since* said injuries, *if any,* not to exceed the sum of $3300." The following clause confines damages for future loss of wages to those which are the "direct result of such injuries, if any," but there is no such limitation with respect to wages already lost. It is clear this instruction, in effect, authorizes a finding of damages for the diseased condition of the bone, and its consequence, if a verdict for respondent was returned on any theory, i. e., even though the jury might return a verdict for respondent on the ground his thumb was hurt and yet decide that the disease of the bone did not result from it. There are other errors of like kind in this instruction. It is an instruction which conceivably might be sound upon some states of fact. It might be so in a case in which it is conceded that an injury for which a defendant may be found liable, if at all, caused all the damages for which recovery is sought. That is not this case.

VII. The verdict was for $12,500. The use of respondent's arm was impaired, according to his expert

**Excessive Verdict.** witnesses one-third or one-half. His medical and hospital expenses aggregated $550. In view of the disposition to be made of the case, the question of the excessiveness of the verdict need not be decided.

The judgment is reversed and the cause remanded. All concur; *Woodson, J.,* in all except paragraph III, as to which he dissents.