EDWARD F. TUCKER, RESPONDENT, v. STEVEN KOLLIAS, APPELLANT.*—
16 S. W. (2d) 649.

St. Louis Court of Appeals. Opinion filed May 7, 1929.

---

*Corpus Juris-Cyc References: Continuances, 13CJ, section 102, p. 174, n. 32; Damages, 17CJ, section 361, p. 1057, n. 56; Evidence, 22CJ, section 758, p. 667, n. 57: 23CJ, section 1793, p. 50, n. 61; Juries, 35CJ, section 439, p. 394, n. 41.

*Jones, Hocker, Sullivan & Angert* and *W. A. McCaleb* for appellant.

*Strubinger & Strubinger* for respondent.

BECKER, J.—Plaintiff, in his action for damages for personal injuries alleged to have been sustained as a result of being struck by an automobile driven by defendant, obtained judgment in the sum of $3500, from which defendant in due course appeals.

Concededly plaintiff made out a case for the jury, and upon the assignments of error presented on this appeal it is a sufficient statement of facts to note that on November 28, 1926, near the intersection of Vandeventer avenue with Page boulevard, in the city of St. Louis, plaintiff was struck and injured by an automobile owned and driven by defendant.

The first assignment of error is that the trial court erred in refusing to sustain defendant's motion to discharge the jury from the further consideration of the case when, on the *voir dire* examination of the jury, plaintiff's counsel asked the jury, over defendant's objection, if any member on the panel was interested financially in the Southern Surety Company. In support of this assignment of error it is argued that the rule permitting counsel to question the jury on the *voir dire* as to their possible interest in or connection with an insurance company is based upon the theory that a juryman who is interested in, or related to one of the parties to the suit, cannot act as a fair and impartial juror, and that the ultimate test of the right to interrogate the jury on such matter is whether the inquiry is made in good faith. Therefore, since the record before us discloses that during the examination of the jury on the *voir dire*, out of the hearing of the jury, plaintiff's attorney was informed by defendant's counsel that none of the panel of the jury were interested in or connected with the Southern Surety Company; such statement by counsel for defendant removed any possible reason for the inquiry, and it necessarily follows that the said inquiry on the part of plaintiff's counsel was not made in good faith.

Does, however, the fact that both the general and special attorney of the Southern Surety Company who participated in the trial of the cause, before the question objected to was asked, stated that none of the jurors were financially interested, as stockholders or otherwise in the Southern Surety Company, lead to the conclusion that the question was not asked in good faith, but solely for the purpose of having the question of insurance brought to the attention of the jurors in the hope that they would bear it in mind that the defendant was insured and make an award of damages for plaintiff solely on account of the fact that some one other than defendant would have to pay? Let us examine the colloquy which took place, out of the hearing of the jury, on the question as to whether or not plaintiff's counsel should be permitted to interrogate the panel as to whether or not any of them were employed by or held stock in the Southern Surety Company. This colloquy shows that Mr. Welker

(conceded in appellant's brief as being the special attorney for the said insurance company), when asked if the Southern Surety Company was defending the case, answered that he did not know, yet he stated that none of the jurors or their families were stockholders, but admitted at the same time that he was not conversant with the names of all of the stockholders of the company. This statement of Mr. Welker was supplemented by a statement of Mr. Smith, one of the attorneys for defendant, to the effect that, "yes, I am their attorney and no members of this panel or their families are in any way connected or interested in the Southern Surety Company."

It has been held repeatedly that where it is shown that the defendant carries insurance, and that such company is interested in the defense of the case, it is proper to permit counsel for plaintiff to inquire of the jury, on their *voir dire*, as to their relationship with such insurance company. This is permitted on the theory that it is proper to ascertain fully the relationship of any prospective juror to the parties interested in the outcome of the case so as to enable counsel to exercise intelligently his right preemptorily to challenge. [Melican v. Whitlow Constr. Co. (Mo.), 278 S. W. 361; Chambers v. Kennedy (Mo.), 274 S. W. 726; Wagner v. Constr. Co. (Mo.), 220 S. W. 890; Floun v. Birger (Mo. App.), 296 S. W. 203; Steinkamp v. Chamberlain (Mo. App.), 294 S. W. 762; Malone v. Small (Mo. App.), 291 S. W. 163; Plannett v. McFall (Mo. App.), 284 S. W. 850.] In our view, it being conceded that the Southern Surety Company was interested in and was actually conducting the defense in the case, the statement by counsel for defendant that no one of the panel or any members of their families were connected directly or indirectly with the insurance company, could not deprive plaintiff of his right. Such statement by counsel for defendant was not made under oath, nor even upon any showing as to what basis counsel may have had for making the statement. Such statement at best could have no probative force. Upon what theory plaintiff's right to make inquiry should be curtailed thereby is not made clear to us. The members of the panel were duly sworn to answer truthfully each question put to them upon their *voir dire*, and plaintiff was entitled to their own answers, under oath, to the questions presented. We rule the point without merit.

Next it is urged that it appeared from the testimony adduced on behalf of plaintiff that the fractured patella or kneecap of plaintiff's left knee was not one of the injuries which plaintiff suffered as a proximate result of the negligence charged against defendant in this case, and that, therefore, the court erred in overruling defendant's motion to strike the testimony relating to that injury from the record.

From a careful reading of the record we are convinced that under all of the evidence in the case the question as to whether or not a fractured patella of the left knee was one of the injuries which plaintiff suffered as the proximate result of defendant running his car into him, was a question for the jury.

Defendant's argument in support of this alleged error is that plaintiff introduced the testimony of two physicians connected with the city hospital of St. Louis, and two X-ray pictures taken of plaintiff's knee the day after he had been injured; that these X-ray pictures do not show any fracture of the patella; and that in addition thereto Dr. Coughlin, who treated plaintiff for approximately two months after he met with his injuries, stated that he found no fracture of the patella, but diagnosed plaintiff's condition as a sprain and tearing of the ligaments of the left knee.

But there is other testimony in the case which has a bearing upon this question. Though it does appear from Dr. Coughlin's testimony that he did not discover that the patella of plaintiff's left knee was fractured, it also appears from his own testimony that he found no fracture at all, though it is admitted that of the X-rays which were taken at the city hospital, one of the plates, exhibit "D" discloses a fracture of the neck of the left fibula, while another plate, exhibit "E" not only shows the same fracture of the left fibula, but in addition thereto a fracture of the outer tuberosity of the tibia. Then again, examining Dr. Coughlin's testimony, we note that as to his examination of plaintiff's knee, he stated: "I could feel what we call in our language crepitation." The word crepitation, as used in medicine, is defined in Webster's New International Dictionary as, "a grating or crackling sensation or sound, as though produced by rubbing two fragments of a broken bone together, or by pressing upon cellular tissue containing air." And Dr. Coughlin further stated he kept plaintiff's knee in a splint for several months, in which he is corroborated by plaintiff himself who testified that his knee was kept in a splint until March, 1928.

Then we have the testimony of Dr. Miller, who examined plaintiff at the request of defendant, who testified that on February 15, 1928, he took X-ray pictures of plaintiff's left knee and that such X-ray pictures showed "a healed fracture of the patella."

Dr. Paul R. Titterington, an X-ray specialist who took X-ray pictures of plaintiff's left knee on May 20, 1927, testified that each of the two pictures which he took showed an "old transverse fracture of the patella and also of the neck of the fibula." Dr. Titterington further testified that "as to whether or not X-ray pictures would show fractures, all depends upon the position."

There is abundant testimony that the fracture of the fibula was such as would ordinarily heal rapidly, but plaintiff himself testi-

fied that his knee remained swollen for several months after he met with his injury, and that his leg was kept in a splint for three months, during which time he moved about on crutches, but after he took the leg out of the splint and he was walking with a crutch and a cane, while standing on the sidewalk preparing to enter an automobile, "I kind of stepped on the sidewalk and a little jerk like that (indicating) and my knee got like it was at first;" that a month or so later he went to the Baptist Hospital for treatment by Dr. O. E. Raines. Dr. Raines had X-rays taken of plaintiff's left knee, which disclosed an old ununited fracture of the patella of the left knee.

. Dr. Raines testified that plaintiff at that time had no movement of the knee joint; it was fixed by adhesion; that he thereupon operated upon the knee joint, dissected out the patella and separated the adhesion, drilled holes in the two ends of the patella and brought them together. Dr. Raines was permitted to testify, without objection, that the condition of plaintiff's knee could have been caused by plaintiff being struck by an automobile on the day on which he admittedly met with his injuries, and that the misstep which plaintiff testified he took on the day when he was attempting to enter the automobile could not have injured plaintiff's patella if it had healed.

Having in mind the evidence set out supra, and the rule that plaintiff was not conclusively bound by any adverse testimony given by some of his witnesses, so long as there is other testimony to the contrary, or where there are other facts and circumstances in the case from which the jury may draw contrary inferences (Hoffman v. Lime Co. (Mo.), 296 S. W. 764, loc. cit. 773), we are of the view, and so hold, that it was a question for the jury to determine whether or not the fracture of the patella of plaintiff's left knee was one of such injuries which plaintiff suffered as the result of the defendant's automobile striking plaintiff, and it was within the province of the jury, in determining the nature and extent of plaintiff's injuries, to accept as true the evidence most favorable to plaintiff's contention. [Busby v. Tel. Co. (Mo.), 287 S. W. 434, loc. cit. 438.]

What we have ruled above is germane to a disposal of the next assignment of error, namely, that the court erred in permitting medical experts to testify that the fractured patella of plaintiff's left knee could have resulted from plaintiff's original injury. In support of this contention it is argued that it appeared from testimony adduced on behalf of plaintiff that the fractured patella was not present one day after the accident and that the physician who treated plaintiff for several months immediately following did not find the fracture.

We have ruled above that under all of the testimony in the case, the question as to whether plaintiff's fractured patella resulted from the collision of defendant's automobile with plaintiff, as alleged in his petition, was a question for the jury. And there is abundant

authority upholding the propriety of the trial court in permitting Dr. Raines, in effect, to testify that in his opinion the fracture of plaintiff's kneecap had been caused by the automobile accident in question. [O'Leary v. Steel Co., 303 Mo. 363, 260 S. W. 55; Kinchlow v. R. R. Co. (Mo.), 264 S. W. 416; Simer v. May Dept. Stores Co. (Mo. App.), 282 S. W. 117.]

The last assignment of error, is that the court erred in denying the defendant a continuance when plaintiff, at the close of the whole case, was permitted to increase his claim for medical expenses from one hundred dollars to six hundred dollars, and to add the additional item of ninety-eight dollars for hospital expenses.

Under the facts and circumstances in the case before us we are constrained to the view that the trial court did not abuse its discretion in permitting plaintiff to amend his petition. The record discloses that testimony respecting the medical and hospital expenses sought to be included in plaintiff's petition by amendment came into the case without objection. Furthermore, after plaintiff's physician had testified as to the value of his services, three other doctors were adduced as witnesses. Among them was a physician who had examined plaintiff at the request of defendant, yet defendant made no effort to inquire of any one of them whether or not the charges for medical or hospital services were reasonable. In a recent case this court ruled that where evidence as to loss of earnings sustained by a plaintiff suing for personal injuries was permitted to go into the case without objection, though without the purview of the petition, we would consider the petition as amended to conform to the evidence. [Whitehead v. Koberman (Mo. App.), 299 S. W. 121.] And it has been ruled repeatedly that when no objection is made to the introduction of evidence, the petition should be considered as amended to conform to the evidence. [Ehrich v. Mittelberg, 299 Mo. 284, 252 S. W. 67; State ex inf. v. Gromer (Mo.), 252 S. W. 705, loc. cit. 707; Treece State Bank v. Wade (Mo. App.), 283 S. W. 714; Reidle v. Scott (Mo. App.), 296 S. W. 262.]

We feel that if plaintiff suffered a fracture of the patella of his left knee, and in light of the verdict of the jury, we are precluded from a contrary view, the amount allowed plaintiff by the verdict is most reasonable. This is evidently the view of the appealing defendant in that the size of the verdict is not urged here as excessive.

Finding no error urged prejudicial to the rights of the defendant, and the judgment being for the right party, it should be affirmed. It is so ordered. *Haid, P. J.*, and *Nipper, J.*, concur.